THE STATE v. JOHN C. RAYMOND.

1. It is error for the trial judge to state to the jury, as a fact within his own knowledge, matter pertinent to the issue but not lawfully put in evidence.

2. It is error for the court to refuse to allow the jury to take with them from the bar the exhibits read in evidence at the trial.

3. Upon the trial of the prisoner for setting fire to a building with intent to defraud the insurers, evidence showing that upwards of five years previously several buildings, in which the prisoner had some interest and which were insured, were burned, is irrelevant, and an instruction by the court to the jury, that such evidence could be considered on the questions, whether the fire in issue was accidental, and whether the prisoner had a motive or intent to defraud anybody at the time that fire occurred, is erroneous, when there is no logical relation between the former fires and the present one, except that they may have all resulted from the criminal disposition of the prisoner.

4. In response to the prisoner's request to charge the jury on the subject of reasonable doubt in a criminal case, the court charged in effect, that, if the jury thought the defendant did not commit the crime, they should give him the benefit of the doubt. *Held,* insufficient and erroneous.

On error to the Middlesex Quarter Sessions. The case was tried before John H. Stewart, Esq., law judge of Mercer county, who had been appointed by the chief justice to preside at the Middlesex Quarter Sessions during the sickness of Judge Cowenhoven.

Argued at November Term, 1890, before BEASLEY, CHIEF JUSTICE, and Justices DIXON and MAGIE.

For the plaintiff in error, *A. H. Strong* and *C. Parker.*

For the state, *Robert Adrain* and *J. Kearny Rice.*

The opinion of the court was delivered by

DIXON, J. The plaintiff in error was indicted for setting fire to a dwelling house in Middlesex county on December 14th, 1888, and on trial in the Middlesex General Quarter Sessions was convicted. The record of conviction is now before this court, with assignments of error based upon exceptions taken at the trial.

The first exception to be noticed relates to a statement made to the jury by the presiding judge under these circumstances: The trial had occupied several days, and in its progress the evidence had indicated that the prisoner's defence might be strengthened by the testimony of one Ellery H. Bouton, if he were produced; on the prisoner's cross examination he admitted that he had not tried to secure Bouton's attendance, and gave as an excuse the fact that he did not know his whereabouts and was confined in jail; at the close of his cross examination the following colloquy took place between the prisoner and the presiding judge:

"Judge—Have you, or is there a man who goes to New York every day for you during this trial?

"Prisoner—No, sir; not expressly for me; he goes every day; I have had him deliver some letters for me and attend to some matters.

"Judge—A black-eyed man?

"Prisoner—Yes, sir; I know who you have reference to.

"Judge—You said the other day on the stand that you did not have any facilities for acquiring witnesses or evidence, or anything of that kind, and I think I ought to state to the jury that this man accosted me on Saturday night, on the train coming from New York, and told me that he was a friend of the defendant and went to New York every day for him; I don't know anything further than that; I thought it was due to the defendant to state the fact to him."

To this statement by the judge of information received by him the prisoner excepted, on the ground that the same was not legal evidence nor proper to be stated to the jury.

The exception was well taken. The jury lawfully may draw unfavorable inferences against a party who can, but does not, produce a witness whose testimony would aid his case if his case were just, and to prevent such an inference for the non-production of Bouton the prisoner was entitled to the benefit of his excuse of inability, unless that excuse was shown by legal evidence to be ill founded. The statement of the judge tended to show the excuse to be ill founded, and that statement was expressly presented to the jury by the judge's remark that he thought he ought to state it to the jury. The statement, however, was not legal evidence. It was delivered to the jury without the sanction of a witness' oath, and in substance it was hearsay. The statement went further than the prisoner's admission, for it indicated that the man who accosted the judge was going to New York every day for the prisoner out of friendship, while the admission indicated only an occasional employment in the way of busi-

ness. The difference, as a means of discovering and producing Bouton, was material.

The next exception to be noticed is for the refusal of the court to permit the jury, when retiring to consider their verdict, to take with them the exhibits in the cause.

The common law rule on this subject seems to have been that expressed in *Vicary* v. *Farthing, Cro. Eliz.* 411, " that writings or books which are not under seal cannot be delivered to the jurors, without the assent of both parties ; but being delivered by the court without the assent of the parties, neither of the parties can avoid the verdict, in regard they were given in evidence before."

This implies that, with respect to writings under seal, the assent of parties was not requisite.

This distinction between these two classes of instruments was abolished in New Jersey by section 20 of the "Act relating to juries and verdicts," passed November 10th, 1797 (*Pat. L., p.* 261), which enacted that papers read in evidence, though not under seal, might be carried from the bar by the jury. This section remained under the same title (*Nix. Dig.* (*4th ed.*), *p.* 453) until the revision of 1874, when it was transferred to the Practice act, § 182. Such transfer did not affect its previous signification, the new title being broad enough to cover it. *Knight* v. *Freeholders of Ocean,* 20 *Vroom* 485.

The common law and statutory rule thus established was evidently designed for the benefit of litigants, and can bear no other reasonable meaning than to confer on each party the right to have the jury take into their private deliberations the papers read in evidence. Such a course is dictated by the principle which entitles the parties to have their controversy decided according to the testimony ; for an actual reference to such papers by the jury keeps the testimony before their minds more clearly than could the mere memory of their contents from a reading during the trial. When, as in the present case, the genuineness of handwriting, or some inference to be gathered from a careful scrutiny of the document, is to be passed upon by the jury, the wisdom of the course is still

more manifest.    No objection against it is suggested.    It is, moreover, in consonance with the common, I think the uniform, practice of our courts.

The withholding of the exhibits from the jury was error.

The next exception is because of the effect ascribed by the court to the fact that other buildings, in which the prisoner was more or less interested, had been previously burned.    On his cross examination the prisoner had testified to six such fires occurring between 1877 and 1883, but his explanations of the causes of the fires, if true, showed him to be blameless with regard to them.    In charging the jury, the court said that the testimony as to those fires was relevant on the questions, whether the fire then being investigated was accidental, and whether the prisoner had a motive or intent to defraud anybody at the time that fire occurred.

The general rule on this subject is, that, upon the trial of a person for one crime, evidence that he has been guilty of other crimes is irrelevant.    But there are several exceptions to this rule, which are illustrated by cases cited in the text books. Many of the cases are also referred to by counsel and court in *People* v. *Sharp*, 107 *N. Y.* 427.

One exception arises, when the circumstances of the crime charged and those of an extraneous crime indicate that they were both committed by the same person—as if two buildings should be fired by similar novel contrivances (*Commonwealth* v. *Choate*, 105 *Mass.* 451), or, perhaps, the notorious Whitechapel murders.

Another, when the defendant's perpetration of an extraneous crime shows that he had the opportunity of committing the crime in issue.    *Regina* v. *Cobden*, 3 *Fost. & F.* 833.

Another, when the several crimes may have sprung from a single motive, aiming at the accomplishment of the same end. *People* v. *Wood*, 3 *Park. Cr. Cas.* 681.

Another exception exists, when the commission of a different offence discloses a motive for the commission of the offence charged; *e. g.*, the defendant's adultery with a wife may be

relevant on his trial for the murder of her husband. *Common wealth* v. *Ferrigan,* 44 *Penna. St.* 386.

Another, when one crime may have been perpetrated as a preparation for, or means of committing, concealing or escaping from another. *Rex* v. *Clewes,* 4 *Car. & P.* 221.

Exception is made also, when the acts charged to be criminal may reasonably be innocent, and are criminal only when performed with a certain intent or with knowledge of a certain fact; in such case, other acts of the defendant, though criminal, may be adduced to prove that he had such specific intent or knowledge. In this category stand the decisions with regard to the utterance of counterfeits, the making of false pretences, the reception of stolen goods, the publication of libels, and, probably, occurrences claimed by the defendant to be accidental. *Whart. Crim. Ev.,* § 50 and *notes; Queen* v. *Francis, L. R.,* 2 *C. C. R.* 128.

And in general it may be said that whenever the defendant's guilt of an extraneous crime tends logically to prove against him some particular element of the crime for which he is being tried, such guilt may be shown.

But it must not be supposed that the defendant's propensity to commit crime, or even to commit crimes of the same sort as that charged, can be put in evidence to prove his guilt of the particular offence; for however reasonable would be the deduction that, when a pocket is picked in a group of persons, of whom only one is addicted to picking pockets, he is the offender, his singularity in this respect could not, under our legal theory, figure as proof of his guilt. There must appear, between the extraneous crime offered in evidence and the crime of which the defendant is accused, some other real connection, beyond the allegation that they have both sprung from the same vicious disposition.

In the present case, the fires which the jury were instructed to regard as relevant testimony on the inquiry, whether the fire in issue was accidental, and whether the prisoner had a motive to defraud anybody by it, occurred between five and eleven years previously, and no ground existed for a suspicion

that there was the slightest connection between it and them,. except such as would bind together the different crimes of any habitual offender. It is impossible to reason from those fires to this, save by the inference that, if the prisoner was to be benefited by the destruction of those buildings and on that. account set them afire, then, if he was to be benefited by the destruction of this building, he probably set it afire also. Such reasoning derives its whole force from the character of the prisoner, which never can be thrown into the scales on a. criminal trial, except at the instance of the accused. Had the state offered to prove the prisoner's connection with those fires. as a substantive part of its affirmative case, I think the offer would have been unhesitatingly overruled; its being brought. out on cross examination of the prisoner, while it might legalize the evidence as possibly bearing upon his credit as a witness, did not render the testimony any more relevant to the main issue of his guilt.

There was error in the charge on this point.

Lastly, we notice the exception taken to the charge on the subject of reasonable doubt.

The prisoner requested the court to charge as follows: "The burden of proof is upon the state to show that a criminal burning of Mrs. Annie Bouton's house at Iselin took place as. charged in the indictment, and that the offence was committed by the defendant. And on both points the jury must be without reasonable doubt."

The court charged: "That is correct—you must be satisfied;" and then gave a summary of the testimony, closing with this instruction: "So, on this point of the case [the defendant's request that he is entitled to the benefit of the doubt], if you think he was not there that night, and if you think he did not set fire to it; if you think all these circumstances that have been related to you by Leeper, McGreevy and the railroad people and the furniture people, and all this. testimony that has been gone over here for the last sixteen or seventeen days—if you think that all that shows that the defendant is not the man who did it, and that he did not have

an interest in doing it, then you are to give him the benefit of the doubt."

The effect of this charge is, that the jury are to give the prisoner the benefit of the doubt only in case they entertain an affirmative opinion that he is not guilty. The defendant in a civil cause is entitled to more than that; an affirmative opinion must be formed against him, before a verdict for his adversary is warranted. But on a criminal trial, it is not merely a belief in the defendant's innocence, but it is the absence of a belief in his guilt so clear and strong as to exclude reasonable doubt, which requires his acquittal. In the various mental conditions, ranging from that in which the jury think the accused innocent, to that in which they are convinced beyond a reasonable doubt of his guilt, he is entitled to the benefit of their uncertainty. This was not accorded to the prisoner under the charge in the present case.

Upon the other assignments of error it is unnecessary to decide.

The judgment must be /reversed, and a *venire de novo* awarded.