CHARLES PARKS, PLAINTIFF IN ERROR, v. THE STATE OF NEW JERSEY, DEFENDANT IN ERROR.

1. Upon a question of connivance in a guilty course of conduct arising on the trial of an indictment for keeping a disorderly house, where an offer is made by the defendant to show an oral complaint made against the house by himself to an officer of the law, it is error to refuse evidence of the nature and terms of the complaint.

2. Upon the trial of such a cause, it is error to allow a series of questions concerning the trial of another case, in another state, against another person, where the character of a house in that state, owned by the defendant, was in question, and where no relation of intercommunication or management is shown or alleged.

On error to the Supreme Court.

For the plaintiff in error, *Frederic W. Ward* and *Edmund Wilson.*

For the defendant in error, *Charles H. Ivins.*

The opinion of the court was delivered by

BARKALOW, J.    The charge in this case against the defendant Parks is that he was guilty of keeping a disorderly house at Asbury Park, of the nature of a gambling-house, between July 6th and August 6th, 1894, although the indictment against him and four others covers a longer time.

The evidence is that Parks was not in possession of the premises until August 21st, although he purchased them at public sale on August 6th, but that, during the time specified in the charge against him, the property was in the possession of Meyers, who pleaded *non vult* to this indictment. The other three defendants have absconded.

The insistment against Parks is that the alleged gambling was arranged for and carried on with his knowledge and connivance.

In establishing this fact, or in failing to do so, the state would be greatly assisted in ascertaining the truth by the introduction of any evidence which would show the attitude of Parks in the matter after he had reason to believe that gambling was going on there, and also by learning whether any previous occurrences holding a strict relation to this offence could be brought home to Parks.

It therefore became competent to show, in this inquiry, conduct on the part of Parks which would indicate his position, or any circumstances strictly related to this offence which would reveal a criminal purpose of that kind. In seeking to meet these two particulars, two matters were offered in evidence, the rulings upon which were excepted to and afterwards sustained by the Supreme Court.

The first appears upon page 121 of the printed case. The marshal of the borough of Asbury Park, called as a witness on behalf of the defendant, after stating that an oral complaint was made to him by Parks on August 6th, " concerning these premises," was asked by defendant's counsel, "What was the nature of that oral complaint?"

This question was objected to, the objection was sustained by the court and an exception was taken, and the ruling was afterwards sustained by the Supreme Court. In that ruling, error is assigned, we think, correctly.

The complaint, of which the nature was asked, was made on August 6th, thirteen days before the disturbance at the house, which preceded the arrest of Parks, and on the very day when he was told for the first time, as he says, while

bidding on the property, that money had been lost there the night before.

The substance of this inquiry first appears on the cross-examination of the state's witness, Meyers; the subsequent prosecution of it occurs in the defence offered by Parks, and there is no force in any suggestion of defect as to time or method in the putting of this question.

As already observed, the defendant Parks was not in possession of the premises at the time the offence is charged to have been committed by him, but he was an intending, or at least a possible, purchaser, and as such of course had an interest in the character and repute of the house.

If it could be shown that he closed his eyes to the circumstances or suffered in silence the doing of wrongful acts there, an inference of participation might be drawn by the jury on this trial. If, on the other hand, it could be shown that he denounced the conduct of the occupants to themselves, or that he complained of the guilty acts to the authorities of the borough, that, too, would certainly be proper matter for the consideration of the jury, who had a right to hear what he said or did, and to form their own conclusions upon the good faith and sufficiency of his objections and efforts.

That they might do this fairly to both parties to the inquiry, it was proper and necessary that they should be told just what the defendant did and said before the officers of the law had interfered.

An actual complaint made to the chief police official of the locality is more than a declaration of feigned or real sentiment; it is an act, and the full significance of it can only be ascertained by an acquaintance with its terms. A mere statement that complaint was made "concerning these premises" is not enough. The jury had a right to know, in the interest of the state as well as of the defendant, just what the complaint was, and what disorder was complained of, and with what seeming purpose; and the defendant, who claims that the answer to the excluded question would sustain his defence, has every right to object to the fact that no answer was per-

mitted. : *Queen* v. *Lillyman, L. R.,* 2 *Q. B.* 167 (1896); 18 *Crim. L. Mag.* 660.

The question should have been allowed, and there was error in the exclusion of it by the trial court and in the subsequent sustaining of that exclusion.

The second matter of consideration is the allowance of a series of questions, upon cross-examination, put to the defendant, concerning a charge made against a police captain in the city of New York, at a time not named, for not having complained against a house in that city owned by the defendant, which was claimed to have been a gambling-house.

No relation between that house and the house at Asbury Park was alleged, either by intercommunication, relation between principal and branch, identity of management or even cotemporaneousness of existence, and the questions put were solely in the nature of a partial trial, with insufficient evidence and no defence, of the charge made against the police captain in New York.

The questions were clearly contrary to the principles laid down in the case of *State* v. *Raymond,* 24 *Vroom* 260, and do not come within any of the exceptions to the general rule which are enumerated and defined by citations in the opinion in that case. Nor do they come within the doctrine established, with copious references to cases, in the text-books of Roscoe and of Wharton on *Criminal Evidence.*

Nor was this testimony offered against the defendant, in his character as a witness, doubtful, as the offer would have been, but it was brought out, apparently, to operate as substantive evidence to prove in some way the offence alleged in the indictment.

The allowance of these questions was clearly wrong, in our opinion, and constitutes a second error in these proceedings.

Both of these errors, we think, were calculated to seriously prejudice the defendant before the jury on the trial of the cause, and are a sufficient reason for reversing the judgment below.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, DEPUE, DIXON, GAR-RISON, GUMMERE, LIPPINCOTT, MAGIE, VAN SYCKEL, BARKALOW, BOGERT, DAYTON, HENDRICKSON, KRUEGER, NIXON.   14.