THE STATE OF NEW JERSEY, DEFENDANT-IN-ERROR, v. IVA GIBERSON, PLAINTIFF-IN-ERROR.

Argued June 20, 1923—Decided November 19, 1923.

1. The provision of the federal constitution against unreasonable searches and seizures are limitations upon federal and not upon state powers. The provision of the New Jersey constitution against unreasonable searches and seizures is not violated when the search was made by the consent of the defendant.
2. One who aids, abets, counsels or procures another to commit murder, provided he was near enough to render assistance, is a principal, not an accessory.
3. In considering an assignment of error directed to a portion of a judge's charge severed from its context and from the whole charge, a court of review will read the context and the whole charge, and if upon considering it in its entirety no error appears the defendant can take nothing by the exception.

---

On error to the Ocean County Oyer and Terminer.

For the plaintiff in error, *William H. Jeffrey* and *James Mercer Davis.*

For the defendant in error, *Wilfred H. Jayne, Jr.,* prosecutor of the pleas, and *Maja Leon Berry.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. The defendant, Iva Giberson, was convicted in the Ocean Oyer and Terminer of murder in the first degree with recommendation to life imprisonment, which was imposed. She has sued out a writ of error to this court and returned the record of the proceedings had upon the trial, meaning, doubtless, the *entire* record of the proceedings, &c., under section 136 of the Criminal Procedure act (*Comp. Stat., p.* 1863), and we have so treated the case.

During her incarceration and before the trial, Mrs. Giberson filed a petition in the Oyer setting forth that on the day of the murder, August 14th, Prosecutor Jayne, in company with Ellis Parker, a detective, and Officers Mason and Kelly, called at her home, and on that day and other days, without lawful authority or search warrant, searched the premises and apartment of petitioner and removed therefrom certain effects of hers, among which were letters, receipts, bank book, loan book, insurance policy, cash, keys, the napkin which was around petitioner's neck, and cords or strings which were around her wrists and ankles, at the time Peterson and other men from the railroad came in response to her cries to the premises on which the murder was committed, and she prayed an order directing the prosecutor and officers to forthwith return those effects alleged to have been unlawfully taken, &c. Mr. Justice Kalisch in the Oyer, in deciding this application, said that the burden of proof was upon Mrs. Giberson; that she called the witness Mason, who said that he had her consent to make the search not only once but several times; that Mrs. Giberson herself said that she did not object to the search of the premises, and, further, volunteered herself to tell where certain things were; and he felt bound by the common law and the decision of this court in the case of *State* v. *Mausert,* 88 *N. J. L.* 286; that he had come to the conclusion that the search and seizure were made with the consent of the defendant, the accused;

that it was a question of fact, so presented by the testimony, and stood as a question of the fact on the evidence taken under the rule to show cause granted on the petition; that although there was no search warrant issued, nevertheless, the accused gave her full consent to the search, and that the papers were taken under these circumstances; the motion was refused and an exception allowed. The question arose again on the admission of evidence on the trial, and there was objection and exception.

The contention on behalf of the defendant is that all of the personal property mentioned in the petition should have been returned to her, because taken from her by unreasonable search and seizure in violation of the constitution of the United States and of this state. The answer is, that the provisions of the constitution of the United States in this regard are limitations upon federal, but not upon state, powers. *Spies* v. *Illinois,* 123 *U. S.* 131; *Brown* v. *New Jersey,* 175 *Id.* 172, and other cases. And our constitution (article 1, section 6) secures persons and property against unreasonable searches and seizures. But this was in nowise violated in this case, because, as a matter of fact, the defendant consented, not only by not protesting, but actually consented in words to the search, which resulted in the seizure of the articles, some of which, by the way, were returned, while other were offered in evidence. The defendant can take nothing by this objection.

Other assignments of error and causes for reversal argued will now be considered.

The fifth assignment of error is that the trial court erroneously admitted in evidence certain altered bank statements. They concerned the account of the deceased in the Peoples National Bank of Lakewood, and the argument is that they were not identified as ever having been issued by the bank, and that their authenticity was, therefore, not established. The cashier testified that that they were issued by the bank with reference to the account of Mr. Giberson, and that Mrs. Giberson, the defendant, did the banking business for her husband during the last two years. These bank statements

were among papers found in the search. They were clearly admissible.

The eighth assignment is directed to the admission of testimony by Martha Giberson, mother-in-law of the defendant, who said that the defendant remarked about a month before the homicide that there was no justice in Toms River (the county seat of Ocean county) ; anyone could commit murder and get clear. The state contends that this was not excepted to. The defendant says there was objection and a motion to strike out the testimony. After the witness had made the statement, counsel moved to strike it out as being incompetent, irrelevant and immaterial. It is apprehended that counsel cannot move to strike out testimony to which no valid objection is made. Treating the motion to strike out as an objection, still it is ineffectual, because it points out no incompetency, irrelevancy or immateriality. Quite aside from the fact that this objection is invalid, the testimony was competent. If the defendant had murder in her heart, she naturally had it on her mind also; and it was quite natural, too, that she should be prone to make statements, born of her thought that she could escape the consequences of her contemplated crime. In other words, this statement to her mother-in-law, assuming that she then contemplated the murder of which the jury found her guilty, seems to be a not unnatural utterance of the thought that must have been uppermost in her mind. The jury might well have assumed defendant then contemplated the homicide. There was no error in admitting the testimony.

The seventeenth assignment is that the court erred in permitting the witness Riley to testify that deceased was not in the bootlegging business in Mount Holly. The objection was that it called for an expression of opinion on a question of fact. Assuming this to be so, it also called for a question of fact, and so for that, if for no other reason, was admissible. No authority is cited to support this untenable objection.

The eighteenth assignment is that the court erred in not striking out the testimony of Archie Murray relating to the

forgery of his signature to a promissory note credited in the bank account of the deceased. The state's contention was that it was a circumstance in the alleged fraud practiced by the defendant upon her husband in the way of fabricating his bank account, and that it was pertinent on the subject of motive generally. There was testimony that Mrs. Giberson transacted her deceased husband's banking business, and there was apparent necessity for discounting the forged note for the purpose of placing money to his credit in the bank, the accused having depleted his account. The judge properly refused to strike out the testimony. There was no error.

As to the thirteenth specification, which attributes error to the charge wherein it was said that the question to be determined by the jury was: Did the defendant commit the deed or did someone at her direction commit it? It is not necessary that she should have been in the bedroom herself and shot the deceased. If someone did it for her, with her consent or under her direction, she is just as guilty as the person who committed the act. The argument was that it is not a correct statement of the law. Counsel evidently had in mind the doctrine as to accessories where one is guilty of counseling, aiding, abetting or procuring a murder to be committed without being actually or constructively present at the time of the homicide. See *State* v. *Fiore*, 85 *N. J. L.* 311.

Our statute, Crimes act (*Comp. Stat., p.* 1780, § 107) provides that murder which shall be perpetrated by means of willful, deliberate and premeditated killing, shall be murder in the first degree; and section 108 provides that every person guilty of murder in the first degree, his aiders, abettors, counselors and procurers, shall suffer death. Thus it appears by the language of the statute that any person who shall aid, abet, counsel or procure a murder to be committed falls within the description of a murderer comprehended by section 107. If the defendant did not herself commit the murder, but directed it to be done, or aided or abetted in its being done, she is a principal and not an accessory, if she were actually or constructively present at the time and place

when and where it was done. In criminal law an accessory is not the chief actor in the perpetration of the offense, nor present at its performance, but one who is in some way concerned therein, either before or after the fact committed. 1 *Bouv. Law Dic. (Rawle's rev.)* 58. One who stands by, aiding and abetting, is guilty of murder, even if he did not himself fire the fatal shot. *State* v. *Orraye,* 84 *N. J. L.* 556. One who points out the deceased to another who struck the fatal blow, and who was near enough to render assistance, made him principal in the second degree. *State* v. *Mowser,* 91 *Id.* 395 (at *p.* 396) ; reversed, on other grounds, 92 *Id.* 474. By the common law all who are present aiding and abetting in a felony are principals. If several persons are parties to one common design, be it murder or other felony, some to commit the fact, others to watch at proper distances to prevent a surprise or to favor the escape of those immediately engaged, they are all, provided the fact be committed, present at it. *Roesel* v. *State,* 62 *Id.* 216, 222.

The indictment in this case was in the statutory form for murder generally and was not an indictment of an accessory, as in the case of *State* v. *Fiore, supra.* There was ample evidence before the jury to justify their finding the defendant guilty of the actual murder or of having aided, abetted, counseled or procured it to be committed, which made her a principal and not an accessory. It makes no difference that the evidence was circumstantial. Oft times that is the most satisfactory sort of evidence. The thirteenth specification of cause for reversal is unsound.

The seventeenth specification, concerning the charge of the court that the defendant herself need not necessarily have done the shooting, &c., is practically the same as the thirteenth assignment, just disposed of adversely to the defendant. Likewise she can take nothing by this one.

The twentieth assignment is that the court refused to charge that if there were persons in the house other than the defendant and the deceased at the time of the shooting the state must show to the jury to a moral certainty, beyond a reasonable doubt, that the defendant and no other person

fired the fatal shot; that if the state had not so satisfied the jury beyond a reasonable doubt they must acquit defendant. The judge charged that if defendant's story were true in that respect (as to the presence of others, &c.) she ought to be acquitted; but even if her story were not true the burden still rested upon the state to establish beyond a reasonable doubt that she herself, or someone else at her direction or whom she abetted, committed the deed. This is closely allied to the eleventh specification of causes for reversal. The excerpt from the charge objected to was this: "This is, as has been remarked, a case of circumstantial evidence; that is, there was no eye-witness, so far as this case reveals, to the shooting, except the person who did the shooting, and he or she is not here. That is the contention on the part of the state, that the shooting was done by either this defendant or by some one under the direction of the defendant. The state does not claim that it has any positive or direct evidence to establish that the defendant did the act; but it says that the circumstances which they have established by the testimony and which existed at the time point unequivocally to the defendant as the perpetrator of the deed."

Counsel for defendant argues that the court referred to an absent person, that is, one not present at the trial, as the one who witnessed the shooting, there being no evidence that any eye-witness was present at the shooting except the person who did it, the state not claiming to have any positive or direct evidence to establish the fact, and it was prejudicial error for the judge to have submitted that theory of the case to the jury. Counsel overlooks the doctrine of presumptive evidence. On all the testimony it was clearly inferable that the defendant was guilty either of shooting the deceased, directing it to be done or aiding and abetting in its being done. The exact language of the charge, "There was no eye witness so far as this case reveals to the shooting except the person who did the shooting, and he or she is not here," is literally an assertion that the defendant did not do the shooting, for she certainly was there present at the trial. And this is favorable to the defendant. Notwithstanding this

favorable comment, literally interpreted, the jury, on amply sufficient evidence, convicted the defendant.

In *State* v. *Timmerari*, 96 *N. J. L.* 442, it was held that if in his charge the judge uses a word or phrase the very opposite of which he intends, and its true intent and meaning are to be gleaned from the other parts of the charge, and if upon the whole charge the jury cannot reasonably be thought to have been misled, there is no error. Now, clearly, the jury must have interpreted this language to mean that it was not proved by an eye-witness that the person who did the shooting was in court, but that the contention of the state was that by and through the circumsances in evidence, the defendant, who was in court, did the shooting. The judge further said that the state did not claim that it had positive and direct evidence to establish that the defendant did the act, but that the circumstances, &c., pointed unequivocally to the defendant as the perpetrator of the deed. That is what the state did claim, and it is idle for defendant's counsel to argue that there was nothing to support it.

As to the eighteenth specification of causes for reversal: It is, that there was error in this portion of the charge: "That if the circumstances which have been established ·by the state are subject to a double inference, one consistent with guilt, and the other consistent with innocence, you must give the construction of innocence to it. If you say that the possession of this revolver by Mrs. Giberson, her going to the outhouse and throwing it in there, is consistent with innocence; if you can make any such inference from that circumstance, you will have to say so. ·But can you? Can you draw any such inference?" Counsel for defendant asserts that the judge assumes this question to be a fact, the possession by Mrs. Giberson of the revolver and throwing it down the outhouse—where she went while the officers were in her residence, and where the revolver was found in the vault after she came out—arguing that the jury might have found that other persons put it there; that many inferences were possible; that the court in effect told the jury what the facts are and what inferences they must draw from them.

What is here objected to is a portion of the charge severed from its context and from the whole charge; but it must be read in the light of the context and the whole charge. See *State* v. *Zdanowicz,* 69 *N. J. L.* 619; *State* v. *Jaggers,* 71 *Id.* 281, 284; *State* v. *Tapack,* 78 *Id.* 208, 211.

The whole charge abounds in statements that all facts and inferences are for the jury, and upon reading the portion of it here objected to, in connection with his other pertinent remarks, it is perfectly clear that the judge did not assume any fact to be true; but gave the jury to understand that they were obliged to take no fact, especially that about the revolver, as proved in the case. On the contrary, it was left entirely to them to judge and find the fact for themselves.

The nineteenth specification (concerning aiding and abetting) is dealt with in the discussion of the eleventh specification.

The twenty-second specification is that the verdict is against the clear weight of the evidence; but this is not argued on behalf of the defendant and must therefore be considered to be abandoned.

We have carefully examined all of the other assignments of error and specifications of causes for reversal which were argued and find them to be devoid of merit. The result reached is that the judgment under review must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF-JUSTICE, TREN-CHARD, PARKER, BLACK, KATZENBACH, WHITE, HEPPEN-HEIMER, ACKERSON, VAN BUSKIRK, JJ. 10.

*For reversal*—None.