STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOHN TOMAINI, PLAINTIFF IN ERROR.

Argued February 2, 1937—Decided April 30, 1937.

For the plaintiff in error, *Joseph F. Mattice.*

For the defendant in error, *T. Raymond Bazley.*

The opinion of the court was delivered by

LLOYD, J. John Tomaini, plaintiff in error, was indicted and tried for murder in the Monmouth Oyer. He was convicted of murder in the first degree with recommendation of life imprisonment and sentenced accordingly. The writ of error taken out by him brings before this court by assignments of error and specification of causes for reversal certain alleged errors in the trial of the case, as also that the verdict was so seriously against the weight of the evidence as to require reversal.

Tomaini was indicted in statutory form for the murder. He was also indicted with the two others for murder in attempting to commit a robbery, and in the same count with conspiring, aiding and abetting others in the commission of the robbery and murder, but tried alone.

The several grounds urged for reversal will be taken up as presented in the brief of the plaintiff in error with the exception of the last, namely, that the verdict was not justified by the evidence.

To determine the merits of this last contention a short recital of the undisputed facts and certain proofs must be examined. The murder of which Tomaini was convicted was in the killing of one William Hobart who conducted a butcher shop in the borough of Avon. Tomaini was employed by Hobart as a butcher and the contention of the state was that he, knowing of the habit of Hobart to carry on his person large sums of money, conceived the plan of robbing him, and to this end conspired with Charles Dover and Paul Barba to accomplish the robbery.

On the trial of Tomaini, Dover was called as a witness by the state and testified to repeated efforts of Tomaini to induce him to join in the robbery. While stating in his testimony that he repelled these suggestions, his conduct implies to the contrary, for after various interviews with Tomaini, he met Barba on the night of July 14th and planned with him the execution of the scheme which Tomaini had not only proposed to him but had obviously likewise arranged with Barba. Early on the following morning Dover borrowed the car of one Russo and proceeded to Tomaini's house where Tomaini placed two revolvers in the car and said that he would be on hand to protect them in getting away. Dover says that he left Tomaini's house with the intention of returning the car to its owner, but meeting Barba he was persuaded to go on with the plan for the robbery, and being without hat or coat they proceeded to Barba's house to get them, together with a number of neckties, and thence to Hobart's butcher shop where they waited until Hobart came and entered his store shortly before seven o'clock. Barba followed Hobart in, demanding that he "stick 'em up" and immediately firing the shot which killed him. Dover started the car and picked up Barba a short distance away from the scene of the shooting.

Numerous witnesses testified to the presence of Tomaini in the immediate vicinity of the crime early in the morning,

depicting circumstances inconsistent with the defendant's subsequent claim that he was there intending to go to work.

To the testimony of Dover at least three witnesses were called who testified that Tomaini had, during the preceding two weeks, made the same proposal to others to rob Hobart. This, together with the testimony of Dover and the inconsistent statements of Tomaini when called as a witness in his own behalf, was substantially the proofs upon which the state asked and obtained the conviction.

By virtue of chapter 349 of the laws of 1921, page 951, where, as here, the plaintiff in error shall elect to take up the entire record, he may assign as error that the verdict was against the weight of the evidence, and the assignment in this case is under the authority of that statute. It was early decided in the case of *State* v. *Karpowitz*, 98 *N. J. L.* 546, that to justify the setting aside of a verdict in a criminal case on the ground that it is against the weight of the evidence, the verdict must so clearly appear to be against the weight of the evidence as to give rise to the inference that it is the "result of mistake, passion, prejudice or partiality," on the part of the jury. This rule has been reiterated in this court as recently as the case of *State* v. *Treficanto*, 106 *Id.* 344.

There was abundance of evidence we think upon which to rest the defendant's conviction. His peculiar knowledge of the moneys in the possession of Hobart and his previous proposals to rob made to persons other than to those ultimately involved is strongly corroborative of the testimony of the witness Dover, an admitted accomplice. The testimony of Dover was submitted to the jury with all proper precaution and the jury having before it the witnesses, and with the means of observation to test the truth of the evidence as produced by the living witness before it, was fully justified so far as the record discloses, in reaching a conclusion of guilty, and this court can certainly not say that its verdict was the result of mistake, passion, prejudice or partiality.

Passing to the alleged trial errors, the first is that the court erred in permitting the witness Dover to testify as to

the purpose for which six or eight neckties were obtained from the house of Barba just before the plan was put into execution to the effect that it was intended to use them to tie up Hobart. Whether the proof was admissible may be in doubt but in no event was the ruling harmful. The neckties were not used, the object of those participating was confessedly robbery, and that the parties might have intended to use the neckties to tie up the victim instead of shooting him was of no serious moment.

Point 2 is that the court erroneously overruled an objection to the testimony of Laurino to the effect that similar proposals were made to him by Tomaini shortly before the actual commission of the crime. It pointed in purpose to the perpetration of the deed, and was clearly admissible.

Point 3 that the court erred in refusing to direct a verdict of acquittal obviously falls with the conclusion we reach on considering the weight of the evidence.

Point 4 is without substance.

The remaining assignments refer to the charge of the court. As to the first of these the jury was instructed as follows:

"If you find from the facts in this case that the state has proven beyond a reasonable doubt that the defendant John Tomaini entered into a conspiracy with either Charles Dover or Paul Barba, or both, for the common object of committing a robbery, and that in the attempted perpetration of the crime, one of them shot and killed William Hobart, John Tomaini is a principal in the commission of murder in the first degree."

The second instruction was that

"If you find beyond a reasonable doubt that the state has established that John Tomaini planned the robbery of one William Hobart, and that in pursuance of his plans and in attempting to carry out the robbery which he had planned with Charles Dover, Paul Barba and others, and that during the attempt to rob, the deceased, William Hobart, was shot and murdered when the defendant John Tomaini was not actually or constructively present, but that the crime was induced by his counsel and advice whereby he became a principal to the murder, your verdict will have to be guilty."

These instructions may be considered together. The complaint is that they treat the defendant as a principal under the evidence of aiding and abetting.

Section 108 of the Crimes act of 1898, page 525, declares that "every person convicted of murder in the first degree, his aiders, abetters, counselors and procurers, shall suffer death." This statute stands to-day except in so far as it is modified by chapter 134 of the laws of 1919, page 303 (immaterial here) permitting the jury (as in this case it did) to recommend life imprisonment.

Whether Tomaini was actually a principal in the commission of the crime or simply aiding and abetting others, the offense and the punishment therefor were in substance one and the same. The words used, "whereby he became a principal" whether by inadvertence or by design, played no part in the guilt of the defendant. Indeed if anything it placed one more obstacle in the path of the state in implying that he had to be a principal in order to be guilty of murder in the first degree, which was not the fact.

At this point it is well to remember the language of the one hundred and thirty-sixth section of the Criminal Procedure act of 1898, page 915, which provides that where (as here) "the entire record of the proceedings had upon the trial of any criminal cause may be returned by the plaintiff in error therein with the writ of error * * * no judgment given upon any indictment shall be reversed for any imperfection, omission, defect in, or lack of form, or for any error except such as shall or may have prejudiced the defendant in maintaining his defense upon the merits."

Nor do we find just cause of complaint of the further instruction respecting the inferences which the jury might legally draw. This was simply a statement to the jury that so far as the law was concerned it might infer that the defendant had murder in his heart and that he would be prone to make statements of his thoughts that he could escape the consequences of his crime. There was certainly nothing in the law to prevent the jury from drawing such an inference and under the proofs such an inference as a matter of fact might well be justified.

Finding no error in the record presented, the judgment is affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, LLOYD, CASE, BODINE, DONGES, HETFIELD, DEAR, WELLS, WOLFS-KEIL, RAFFERTY, COLE, JJ. 12.

*For reversal*—THE CHIEF JUSTICE, PARKER, HEHER, PERSKIE, JJ. 4.