THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. FRANK B. FAY, Jr., PLAINTIFF IN ERROR.

Argued January 22, 1941—Decided July 25, 1941.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PERSKIE. .

For the plaintiff in- error, *King & Vogt (Harold A. Price,* of counsel).

For the state, *William A. Hegarty (John Drewen,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. The question requiring decision in this cause is whether any reversible error was committed in the conviction of plaintiff in error for having violated certain provisions of our election laws relating to procuring, advising or assisting unlawful registration, and unlawful voting.

Title 19 (Elections) provides (*N. J. S. A.* 19:34-20) that those convicted for violating the following provisions, amongst others, shall be guilty of misdemeanors.

1. "Whoever shall * * * willfully counsel, procure, aid, advise, assist or abet in the *registering* of the name of any other person on the registry list of any election district or precinct, *knowing* such other person is not entitled to vote therein * * *."

2. "Whoever, * * * at any election counsels, procures, aids, advises, assist or abets any person, *knowing* that he is not a qualified voter, *to vote thereat:* * * *."

Frank B. Fay, Jr., plaintiff in error here and defendant below, was tried and convicted by a jury on an indictment concededly found under the above stated provisions of the statute.

The indictment, which consists of two counts, charges that defendant violated both the above quoted provisions, by willfully counseling, procuring, aiding, advising, assisting and abetting one Ragnhild H. Matzen to register illegally and to vote illegally at the general election for the First Election District of the Borough of Kinnelon, County of Morris, held on November 8th, 1938.

The proofs disclosed, in substance, that Miss Matzen was a resident of Plainfield, Union County, New Jersey, from the time that she was "very small" and that prior to the year 1938 she had voted at Plainfield. The defendant, Frank B. Fay, Jr., was president of Fayson Lakes, Inc., a development company at Fayson Lakes located in Morris County. Miss Matzen, on or before July 1st, 1938, first met the defendant when she came to Fayson Lakes to look at some property. She carried on all her transactions for the rental of a house for the month of July, 1938, with Frank Fay, 3d, a son of the defendant. After residing at Fayson Lakes for one month, she returned to Plainfield. On August 20th, 1938, Miss Matzen contracted for the purchase of property at Fayson Lakes again conducting all her transactions with defendant's son. On the day of the contract, she made out a check and an installment note, both payable to Frank B. Fay, Jr., the defendant. The note was paid off by a "few payments" sent through the mails to the defendant. On June 1st, 1940, the conveyance was made to Miss Matzen by Fayson Lakes, Inc.

Frank B. Fay, Jr., the defendant, became a candidate for mayor of Kinnelon Borough in the year of 1938. During the primary campaign the following typewritten circular, prepared by his office, and, "possibly" by him, was mailed "to a list of people who were property owners for long standing:"

"September 1, 1938.

There is to be a primary election in Kinnelon Borough on September 20th, 1938. This election is of considerable importance to you as a property owner and if you can find it convenient, *it will be to your best advantage to register and vote at that time where your vote really counts.* If you desire, it will only be necessary to leave your name or names in the office and the registration will be taken care for you. Please give this your immediate attention.

FRANK FAY."

It is not clear as to whether or not Miss Matzen received one of these circulars. She did testify, however, that she was out of the country during the primary election and did not vote thereat.

Defendant was defeated at the primary election. Prior to the general election, however, he conducted an independent "paster campaign." Pursuant to that campaign the following letter was composed by him, sent through the mails at his direction, and received by Miss Matzen:

"November 1, 1938.

Miss Ragnhild H. Matzen,
926 Kenyon Avenue,
Plainfield, N. J.

Dear Miss Matzen:

May I remind you of the General Election *here* on *November 8th.*

As a result of the activity of the former President of The Fayson Lakes Association, a feeling among some of the people on the northerly side of the Borough has arisen that the owners at Fayson Lakes should have their taxes revised upward. During the next two years two appointments to the Tax Assessing Board will be made by the man elected at this election as Mayor and if the third member, who is at present very ill in the Hospital, should not be able to serve, there will be three appointees. We have no representation on this Board.

You expressed a wish to vote here but no doubt due to the rainy weather on Primary Day you were prevented from doing so.

May I count on your support as that is the one time in the year *you* must help us to help you, we cannot do it alone.

Sincerely,

(Signed) FRANK FAY.

FRANK B. FAY, JR.

*Vote November 8th."*

Miss Matzen testified that the letter also contained a ballot. Testimony was introduced to show that similar letters were sent to other Fayson Lake property owners.

On November 8th, 1938, the day of the election, Miss Matzen went to the Fay farm house. Fay, 3d, and another man named Miller, were there. After some conversation Fay, 3d, suggested that Miller drive Miss Matzen to the school house where the voting poll was located. This was done. They were met there by the defendant, Frank B. Fay, Jr., who addressed Miss Matzen by her name, took her by the arm, and led her down to the desk where registration was being held. There the defendant introduced her to the board. Miss Matzen also testified that while she was getting out of the car, either Miller or Fay gave her a sticker which she used in voting after she had registered.

In the trial below, the court in a very comprehensive and fair charge, pointed out to the jury that to hold the defendant guilty, they "must first determine and be satisfied beyond a reasonable doubt that Miss Matzen did not have a right to make a legal registry, and, secondly, that she did make an illegal registry; thirdly, that Frank B. Fay, Jr., by some act of his, some act or transaction of his, did willfully counsel, aid, advise, assist and abet her to do it, and fourthly, that he knew when he did so that she did not have such a right to register, and you must be satisfied beyond a reasonable doubt that each of these four elements have been proved in the testimony in this case, giving consideration as well to the testimony of the defendant and his witnesses, as well as to the state and its witnesses."

The jury found defendant guilty as charged. He now appeals. That appeal is before us on a strict writ of error and also on a certificate of the entire record of the proceedings had at the trial pursuant to *R. S.* 2:195-16.

Defendant sets down 72 assignments of error and 118 specifications of causes for reversal. Few of the 10 grounds of appeal argued require discussion.

1. Defendant argues that the admission of testimony concerning a conversation which defendant had with one Haussling was prejudicial error and should have been excluded under the *res inter alios acta* doctrine. By this testimony it was established that defendant had, on a "Sunday or two before" election urged Haussling to vote because "it was for the interest of property owners of Fayson Lakes to come out and vote for him." After Haussling had explained to defendant that he (Haussling) was not entitled to vote because he "had not been there long enough, and had not established a residence," defendant nevertheless "still urged [him] to vote." Haussling, however, did not vote.

Assuming that, because of defendant's stated efforts, Haussling had registered and had voted illegally, and that, by reason thereof, defendant was guilty of a crime, let us, solely for the purpose of analogy, apply the well established principles underlying the *res inter alios acta* doctrine to the facts of the case at bar.

It is well established that the state cannot, as a general rule, prove that the defendant committed other crimes, although of a like nature, for the purpose of showing that defendant would be likely to commit the crime charged. *Clark* v. *State,* 47 *N. J. L.* 556, 558; 4 *Atl. Rep.* 327. For on the trial of a person for one crime, evidence that he had been guilty of other crimes is irrelevant. *State* v. *Raymond,* 53 *N. J. L.* 260, 264; 21 *Atl. Rep.* 328; *Meyer* v. *State,* 59 *N. J. L.* 310; 36 *Atl. Rep.* 483; *Parks* v. *State,* 59 *N. J. L.* 573; 36 *Atl. Rep.* 935; *Leonard* v. *State,* 60 *N. J. L.* 8; 41 *Atl. Rep.* 561; *Ryan* v. *State,* 60 *N. J. L.* 552; 38 *Atl. Rep.* 672. For exceptions to the stated rule see *State* v. *Raymond, supra* (at *pp.* 264 and 265). But in a general way it has been said "* * * that whenever the defendant's guilt

of an extraneous crime tends logically to prove against him *some particular element of the crime* for which he is being tried, such guilt may be shown." *State* v. *Raymond, supra* (at *p.* 265). *Cf. State* v. *Lederman,* 112 *N. J. L.* 366, 373; 170 *Atl. Rep.* 652. "Scienter" (*Meyer* v. *State, supra,* at *p.* 311), "state of mind" (*State* v. *McNamara,* 116 *N. J. L.* 497, 499; 184 *Atl. Rep.* 797), and "knowledge" as here, may be thus proved. *Cf. State* v. *Atti,* 127 *N. J. L.* 39. It must, of course, be made to appear that there is some "real connection" between the "extraneous crime" offered in proof and the "crime of which defendant is accused" beyond the allegation that "they spring from the same vicious disposition." *State* v. *Raymond, supra* (at *p.* 265). In words borrowed from the late Chief Justice Gummere, "* * * Where the prior crime evidences a state of mind shown to have been carried forward and exhibited in the criminal act under investigation, and so nearly related in time, place and circumstances, that the mental state involved is practically continuous, such evidence is competent. Where a series of crimes are committed for the accomplishment of a single ultimate purpose, and that purpose is manifestly the sole inducing cause of the commission of each separate crime, the rule applied in the case just cited makes proof of these separate crimes competent evidence." *State* v. *Landecker,* 100 *N. J. L.* 195, 198; 126 *Atl. Rep.* 408; *affirmed,* 103 *N. J. L.* 716; 137 *Atl. Rep.* 919.

The state was, of course, obliged to prove the guilt of the defendant, as charged, beyond a reasonable doubt. That obligation made it necessary for the state to prove "culpable intent" and not "mere ignorance" on the part of defendant. *State* v. *McBarron,* 66 *N. J. L.* 680, 682; 51 *Atl. Rep.* 146. The challenged conversation with Haussling, in our opinion, was clearly admissible. It was testimony from which the jury could, as it did, conclude that the defendant's state of mind was bent on one objective, votes and more votes, irrespective of the known illegality of those votes. Such testimony to prove knowledge—a particular element of the crime charged—comes clearly within the stated exceptions to the *res inter alios acta* doctrine. The trial judge correctly instructed the

jury as to the limited effect of that testimony. What has been said as to the Haussling testimony applies to other substantially like oral and written testimony here challenged.

2. Defendant argues that the trial judge erred in refusing to charge number 4 of his requests to charge. As requested the charge reads as follows:

"4. For the jury to find a verdict of guilty the proof of the defendant Frank B. Fay, Jr.'s, knowledge of the illegality of Miss Matzen's vote must be clear, *not a mere inference that he could have found out by further inquiry.*"

Save as to the italicized portion of the charge, the court charged as requested. This omission, it is argued, is reversible error. In support of the argument it is urged that the omitted portion is the very language employed in the case of *State* v. *McBarron, supra* (at *p.* 682). This, however, is not altogether so. The omitted portion was merely an excerpt of some of the language employed by the court in that case. The court had in the instant case correctly charged that the state was obliged to prove, beyond a reasonable doubt, all of the component elements of the offenses as charged and tried. Additionally, the court charged defendant's request to charge number 3. That request was also in some of the very same words used in *State* v. *McBarron, supra,* and reads:

"3. You should acquit defendant Frank B. Fay, Jr., unless the state has clearly proved knowledge on his part of the illegality of Miss Matzen's vote, or shown such knowledge by such circumstances, as leave no reasonable doubt on a fair mind."

That part of request number 4 which was charged by the trial judge, when read in the light of the entire charge (*State* v. *Giberson,* 99 *N. J. L.* 85, 93; 122 *Atl. Rep.* 724), fairly, accurately and clearly states the applicable law. It is free from reversible error.

3. Defendant further argues that the verdict of the jury was against the weight of the evidence and that the court erred in its failure to direct a verdict both at the end of the state's case and at the end of the entire case.

This argument, brought up for review pursuant to *R. S.* 2:195-16, raises only one question—"Whether upon the evi-

dence as it stood when the motions were made, there was a case for the jury." *State* v. *Jaggers*, 71 *N. J. L.* 281, 283; 58 *Atl. Rep.* 1014; *State* v. *Lieberman*, 80 *N. J. L.* 506, 508; 79 *Atl. Rep.* 331; *affirmed*, 82 *N. J. L.* 748; 82 *Atl. Rep.* 1134; *State* v. *Bacheller*, 89 *N. J. L.* 433, 435; 98 *Atl. Rep.* 829; *State* v. *Contarino*, 92 *N. J. L.* 381, 383; 105 *Atl. Rep.* 197. Without restating the proofs, we are firmly of the opinion that the motions were properly denied. There was ample evidence requiring the submission of the case to the jury.

Nor is it made to appear, pursuant to *R. S.* 2:195-19, that the jury failed to function within its "allotted sphere;" and thus no resultant "injustice" requires correction. *State* v. *Woodworth*, 121 *N. J. L.* 78, 90, 91; 1 *Atl. Rep.* (2d) 254. The test is not whether we, as reviewing judges, are satisfied of defendant's guilt beyond a reasonable doubt. *State* v. *Woodworth*, *supra* (at *p.* 91); *State* v. *Hauptmann*, 115 *N. J. L.* 412, 443; 180 *Atl. Rep.* 809; *State* v. *Karpowitz*, 98 *N. J. L.* 546; 120 *Atl. Rep.* 40; *State* v. *Tomaini*, 118 *N. J. L.* 162; 191 *Atl. Rep.* 870; *State* v. *Linarducci*, 122 *N. J. L.* 137, 144; 3 *Atl. Rep.* (2d) 796; *affirmed*, 123 *N. J. L.* 228; 8 *Atl. Rep.* (2d) 576. The test is whether the verdict is such as to give rise to the inference that it was the "result of mistake, passion, prejudice or partiality" on the part of the jury. *State* v. *Dworecki*, 124 *N. J. L.* 219, 223; 10 *Atl. Rep.* (2d) 287; *State* v. *Woodworth*, *supra* (at *pp.* 90, 91); *State* v. *Tomaini*, *supra.*

"Fraudulent conduct at elections goes to the essence of popular government." *Wilentz* v. *Galvin*, 125 *N. J. L.* 455, 457; 15 *Atl. Rep.* (2d) 903. The ballot in the hands of the qualified voter is the means by which he exercises his inalienable right to give consent as to how and by whom he chooses to be governed. The honesty, integrity and inviolability of that ballot must be maintained.

There is ample evidence to support the verdict of the jury.

4. In light of the result reached it becomes unnecessary to discuss the alternative argument of the state by which the conviction is sought to be sustained on the theory that proof of knowledge was not necessary.

All italicizing is supplied. We have considered all other points argued and find them to be without merit.

Accordingly, the judgment of conviction is affirmed, with costs.