STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. MICHAEL MUSSIKEE AND JOSEPH H. HORNE, PLAIN-TIFFS IN ERROR.

Argued January 6, 1925—Decided April 16, 1925.

1. When various types of offenses included in a criminal statute are closely interrelated, an indictment is not duplicitous which follows the language of the statute in charging two separate offenses.

2. The state does not have to elect, on a criminal indictment, between two counts charging similar and interrelated offenses, but may ask conviction on both counts, if the proof support them.

3. Where the words of a conversation with a witness and the defendant are ordinary language in common use, opinion evidence with respect to the meaning of the words is incompetent.

4. Where an inference unfavorable to a party may be drawn from the fact of the party having had some communication with another person, such party is entitled to show, if he can, that the communication was harmless.

5. Upon the trial of a defendant for arson, it is error to permit him to be asked, on cross-examination, how many fires he had had in a certain prior period, as such testimony is irrelevant to the issue whether he set fire to the particular building which is the subject of the indictment.

6. The conviction of a witness of a crime may be shown ·for the purpose of affecting his credit, and it is erroneous for the court to instruct the jury, in effect, that it may give the fact of his conviction such weight as they see fit, but if they did not see fit to weigh the conviction, they were not required to do so.

On appeal from the Essex Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KATZENBACH.

For the defendant Mussikee, *Merritt Lane.*

For the defendant Horne, *Thomas A. Davis.*

For the state, *John O. Bigelow,* prosecutor of the pleas.

The opinion of the court was delivered by

PARKER, J. Defendants were indicted jointly for the violation of sections 124 and 126 of the Crimes act. Section 124 relates to the willful and malicious burning, or causing to be burned, a building not a parcel of a dwelling-house, &c., and section 126 relates to the willful and malicious burning, &c., of a building which is insured with intent to prejudice the insurer. There was a general verdict of guilty against both defendants, and both join in the present writ of error. A great many grounds for reversal have been urged, but we do not deem it necessary to deal at length with all of them. The general facts shown on the evidence with relation to the burning and the alleged part that the defendants took in the same, are that the defendant Horne was president of a manufacturing company which occupied the building in question, and was also president of a realty company which owned the same, and heavily interested in both companies. The defendant Mussikee seems to have had no interest in either building or business, but, according to the claim of the state, had assisted Horne in setting the building on fire. On a Saturday afternoon in early January the shop closed down, the force was dismissed over Sunday, and, according to some of the testimony, everything was cleaned up and left in excellent order. About midnight the building was discovered to be on fire, and, according to the state's claim, was on fire in two places so separated from each other that the fire could not have been communicated from one to the other. It took several hours to put the fire out. The firemen observed that when they got in the building boxes and goods were littered all over the shop in both rooms where the fire had been burning, and there was a good deal of evidence to indicate that the fire had been set. The state then undertook to connect up both Horne and Mussikee with the setting of the fire, and evidently did so to the satisfaction of the jury, which found a verdict of conviction against both of them.

The indictment is objected to for duplicity. We incline to think that it is not duplicitous, as it follows the language of the statute, and the various types of offense included in the

statute seem to be so interrelated as to bring the case in line with the recent decision of this court in *State* v. *Bove,* 98 *N. J. L.* 350 (at *p.* 352); *affirmed, Id.* 576. Moreover, it would seem that the question is not properly before us. *State* v. *Harris,* 100 *Id.* 184.

The next general point argued is that there was error in refusing to require the state to elect between the two counts. There was no error in this refusal. The state was entitled under the proof to rely on both. Nothing is more common than a general conviction on all of several counts, and the argument now made that this involves a double punishment is, in our estimation, entirely without substance.

There were, however, several rulings by the trial court on the admission and rejection of evidence, which, in our view, were erroneous, were manifestly harmful to the defendants, or one of them, and which, therefore, require a reversal of this judgment. The first ground worthy of mention is that the court overruled an objection to a question put to the witness Goldberg as to what he understood defendant Horne to mean when he used certain language. Goldberg testified that Horne came to see him, and, after some preliminaries, said to him: "There is a factory I want to have cleaned out in that factory from top to bottom. * * * Q. What did you understand Horne to say to you when he said that he had a factory that he wanted cleaned up from top to bottom, right from the ground; what did you understand him to say; what did he mean?" Objected to, question allowed and exception entered for defendant. "A. I figured he wanted to burn it up."

This, manifestly, called for an expression of opinion on the part of the witness with relation to the meaning of language which was not shown to have been used in any technical sense, and we think it is elementary law that, where the language is ordinary language in common use, that opinion evidence with respect to its meaning is, ordinarily, incompetent. As long ago as 1795, in the case of *State* v. *Mairs,* 1 *N. J. L.* 453 (at *p.* 454), counsel for defendant asked a witness upon his examination what Mairs meant by an expression

which the witness had sworn that he had used. As to witness' examination, *"per* Chief Justice [Kinsey] the question is altogether improper." Such, we think, has been the rule from that day to this.

The next ruling that we think erroneous was that the court overruled a question to the defendant Horne with respect to what conversation he had over the telephone with Mussikee. This ruling came about in this wise: It was made to appear for the state that after the fire an automobile came to the house of a Mrs. Nevin, where Horne lodged, and a man got out and left a message for Horne, which she gave to him. After considerable urging and production of her written statement by the prosecutor, the state claims to have established the inference that Horne did get the message; that it was a message asking Horne to call up Mussikee at Passaic, where the latter lived, and Horne had some sort of a conversation with him over the telephone. In view of the other evidence in the case, the state necessarily claimed that the jury should draw the inference that Horne and Mussikee had been conversing over the telephone with respect to a fire that they criminally set. The state went no further in the matter, and, in due course, the defense called Horne to the stand and Horne stated that he did call up Mussikee, but did not talk to him at that time; that later in the evening Mussikee called him up. "*Q.* Did you have a conversation about that paper? [the written message]. *A.* I did. *Q.* What was the conversation?" (Objected to, overruled and exception entered by defendant Mussikee.) On cross-examination by Mussikee's counsel the following occurred: "*Q.* Mr. Horne, what did Mr. Mussikee say to you when he got you on the telephone?" (Objected to and objection sustained, exception entered.) "*Q.* Mr. Horne, what did you say to Mr. Mussikee after you got in touch with him on the telephone?" (Objected to, objection sustained, exception entered.)

We need not go outside of our own decisions for authority to support our view that these rulings were erroneous. In *Somerville and Easton Railroad Co.* ads. *Doughty,* 22 *N. J. L.* 495 (at *p.* 500), a witness for the plaintiff on cross-exami-

nation was asked by defendant's counsel whether the plaintiff
had at any time told him how his property was injured by
the railroad, and answered in the affirmative. The cross-
examination there ended. He was then asked by plaintiff's
counsel what the plaintiff had said to him as to the mode or
manner in which he was injured by the road. This was ob-
jected to, but the court allowed it, and the witness answered.
It was alleged on rule to show cause that there was error in
this ruling, but Judge Nevius said in the opinion: "I think
the court was right in so ruling. It was manifest that the
question put by the defendants was calculated, if not designed,
to impute to the plaintiff an improper attempt to influence
the witness' opinions, and to impair the credit of the witness,
by producing an impression on the minds of the jury that he
had been, or was, influenced by such attempt. The plaintiff,
therefore, in all fairness, was entitled to overcome or avoid
such impression, by explaining what, in truth, he had said on
the subject. The court and jury had a right to know, that
they might judge fairly of the conduct of the party and the
credit of the witness. The conversation between the plain-
tiff and the witness was not in itself either unlawful or im-
proper, and, as it was introduced by the defendant, the plain-
tiff had a clear right to show what it was."

In *State* v. *McCormack*, 93 *N. J. L.* 287, it was held that
a party who calls a witness may re-examine him to rebut or
explain the effect of new matters brought out on cross-exami-
nation.

It is, of course, true that in this case the original testi-
mony, to the effect that Horne had got a written message to
call up Mussikee, and had done so, and had had a conversa-
tion with Mussikee, came from the lips of other witnesses,
but we apprehend there is no difference in principle between
this situation and that of Horne having admitted on cross-
examination that he had called up Mussikee, and then being
asked by his own counsel what he had said. The principle in
both cases is that enunciated in the Doughty case, just cited,
viz., that where an inference unfavorable to a party is to be
drawn from the fact of that party having had some commu-

nication with another person, such party is entitled to show the harmless character of the communication if he can. We might add that the exclusion of the testimony as to what the conversation was, was manifestly injurious to both Mussikee and Horne, because the conversation was between them.

We incline to think, also, that there was error in permitting cross-examination of the defendant Mussikee with relation to the number and character of fires in which he had been concerned during the previous ten years. It is true that Mussikee's counsel had succeeded in putting in over the objection of the state his testimony that at the time of the fire he was worth about $100,000, and owned various pieces of real estate in Passaic and thereabouts. This testimony, we think, should not have been admitted, as it was utterly irrelevant to the issue, and had nothing whatever to do in a legal sense with the probability, or otherwise, of the commission of a crime by Mussikee. This fact, however, does not validate the line of questions asked on cross-examination immediately afterwards. He was asked how many fires he had had in the last ten years, and was made to answer, and said about three; that one had occurred in Clifton, where Goldberg lived, another was one in Clifton, and the third was in Passaic, and that all were covered by insurance. These questions appear to have been directly in the face of our decision in *State* v. *Raymond,* 53 *N. J. L.* 260.

Finally, we think there was error in the court's charge with regard to the credibility of the witness Goldberg's testimony, and that of, perhaps, another witness. The court said: "There has come into the case testimony of prior conviction of crime, I think, at least, one of the witnesses, and, probably, two. The law says that a conviction for crime may be shown for the purpose of affecting the credibility of the witness—in other words, a man takes the witness-stand and testifies as a witness, and the jurors have a right to know he has been convicted of crime before for the purpose of affecting his credit. There is nothing mandatory about it. You may, if you see fit, weigh the prior conviction and give such credit to his testimony as you think ought to be given." We think

that this instruction tended to create a false impression in the minds of the jury with respect to the effect of conviction of crime on credibility of evidence. It appears to have been equivalent to saying that it made no difference whether Goldberg had been convicted of crime or not, but the jury could, if they saw fit, weigh the prior conviction, but a fair inference from the instruction is that if the jury did not see fit to weigh the conviction, they were not required to do so. This, we think, is not the rule. Where it is shown that a witness has been convicted of crime, that fact, by the express language of the statute, is "for the purpose of affecting his credit." The jury, therefore, should, at least, take it into consideration and ask themselves whether such conviction does affect the credit of the witnesses, and, if so, to what extent; but they are not justified in refusing to consider it at all.

The foregoing errors require a reversal of the judgment.

There was one other ruling which may be said to have been, at least, doubtful, and which may as well be mentioned, as the case must go back for another trial. Defendants' witness Ruehe, an insurance adjuster, was asked by counsel for defendant whether, when he visited the factory two days after the fire, he saw any indications of an incendiary fire. He said that he did not, but presently, on motion of the state, his answer was struck out and the question overruled. The colloquy between counsel and the court makes it very plain that the evidence was excluded, not because the court appeared to have any doubt about the qualifications of the witness as an expert in such matters, but because his view of the situation came two days after the fire. We are not prepared to say whether an insurance adjuster, because of his occupation, is to be regarded as an expert on the character of a fire, whether incendiary or otherwise; certainly, he had not been otherwise qualified on that point, and, perhaps, the court might well have refused to deem him qualified as an expert; but if it was satisfied with his qualifications in that regard, we are quite unable to understand why an interval

of two days from the fire would justify the court in rejecting his account of what he saw when there was nothing to show that there had been any change in the situation since the morning when the fire was extinguished. It is common knowledge in this class of cases that immediately after a fire is out, the place is, ordinarily, boarded up, and often a watchman put in charge. We do not, however, pass directly on this point as a ground of reversal, but content ourselves with the other grounds above mentioned.

Let the judgment be reversed, and the cause remanded to the Essex Quarter Sessions for a new trial.