59 N.J. Super. 453 (1960)
158 A.2d 7
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HENRY HOWARD McNAIR, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 15, 1960.
Decided February 17, 1960.
*455 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Henry H. McNair, appellant, pro se.
Mr. Brendan T. Byrne, Essex County Prosecutor, attorney for respondent (Mr. Milton H. Diamond, of counsel and on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Pursuant to leave granted by this court, defendant appeals in forma pauperis from a judgment of conviction in the Essex County Court, entered upon a verdict of guilt, for the unlawful possession of a narcotic drug, heroin, in violation of R.S. 24:18-4. Defendant was given a State Prison sentence of 10 to 12 years and in addition ordered to pay a $1,000 fine.
Defendant's first argument is that the trial court erred in denying his motion for judgment of acquittal at the close of the State's case. We have reviewed the record and find nothing to support the contention. The proofs adduced by the State, viewed in their entirety, were such that the jury could properly find therefrom, beyond a reasonable doubt, that defendant was guilty of the crime charged. State v. Goodman, 9 N.J. 569, 581 (1952). The direct and circumstantial evidence presented by the prosecution inextricably tied defendant to the packages of heroin discovered in the bottom half of the chandelier in his apartment. *456 This evidence was incriminating in the highest degree. An issue of guilt or innocence was clearly established and properly submitted to the jury.
Under this point of his brief, defendant also claims that the verdict was against the weight of the evidence. This contention is equally without merit. Although defendant took the witness stand in his own behalf, his testimony did little to rebut the overwhelming evidence that linked him with the crime. He admitted he was in sole control of his apartment; that when one of the detectives who took him into custody suggested a visit to the apartment he said "Let's go"; that when they arrived there he unlocked the door and freely admitted the detectives to the apartment; that he then told them, "You can look all you want. I didn't do nothing wrong"; and that the detectives found packages of heroin in his living room chandelier. He pleaded ignorance of the heroin and categorically denied all admissions attributed to him by the State's witnesses. He suggested the possibility that one of the many persons who had been his guests at the apartment was responsible for the presence of the heroin, or that someone may have gotten into the apartment through a broken window and secreted the packages. While under cross-examination, he said: "So, he [Detective Mueller] started searching the house. I said, `If you find anything in this house I'll say I don't know nothing about it. I'll say anything you find I don't know * * *.'" Almost the next moment he denied making this statement, but when it was read back to him, attempted to explain it away by saying, "You confuse me or something," and "I didn't mean it."
Compare all this with the testimony brought out on the State's case, that when the detective who found the packets of heroin asked defendant if he could explain them, he said, "I guess you got me." Asked whether the packets belonged to him, defendant replied, "It is my apartment, and everything in the apartment is mine." Another of the detectives picked up one of the packets and inquired of defendant, *457 "Pops, how many is in here?" He answered, "There's 50." The packet was then opened and 51 "folds" or "decks" of heroin counted. The same detective asked, "Pops, where did you get this from? Who made the delivery?" and defendant said, "You must have seen the delivery last night." He also said, "I never sold to anybody, but I might just be a distributor." And when defendant was asked if there was anything more he wanted to tell the detectives about the matter, he exclaimed, "What the hell more do you want? You got me."
Defendant's second point on appeal is that he was denied his right to a fair trial because the trial judge refused to charge defense request No. 13, which read as follows:
"The fact that the defendant or any witness in this case has previously been convicted of crime may affect the credibility of the testimony of the defendant or a witness. However, despite this instruction, I specifically charge you, the jury, that you in your discretion may give full credence to the defendant's testimony or the testimony of any witness previously convicted of crime."
The trial judge instructed the jury as follows:
"Now, the State has offered evidence of a prior conviction of the defendant. The law as to that is as follows: A prior conviction of crime does not prove nor does it tend to prove a person guilty of the crime presently charged against him. The question, therefore, may arise in your mind as to why the law permits such conviction to be shown. The answer is this: The law permits it to be shown that a witness, whether a defendant or not, has been previously convicted of crime for one purpose only, and that purpose is as affecting his credibility. It is admissible for no other purpose."
More generally, the jury was instructed that it was the sole and exclusive judge of the facts, the weight of the testimony, the credibility of the witnesses, the reasonable inferences to be drawn from the evidence, and the ultimate conclusion to be reached on a consideration of all the evidence in the case.
Defendant insists that all this was not enough. He claims he was entitled to have the jury specifically informed that *458 he was a competent witness (incidentally, no request so to charge was made), and that it might in its discretion fully believe him despite his prior conviction.
Our Evidence Act has long permitted a conviction to be shown for the purpose of affecting the credibility of any witness, N.J.S. 2A:81-12 (Gen. Stat., p. 1397, § 1; L. 1900, c. 150, §§ 1, 7; R.S. 2:97-13), since that fact "may aid the jury in weighing his testimony." State v. Fox, 12 N.J. Super. 132, 139 (App. Div. 1951). Stated in another way, the jury is entitled to take the fact of prior conviction into consideration when passing upon the credibility of a witness. State v. Sandt, 95 N.J.L. 49, 51 (Sup. Ct. 1920). On the other hand a jury is not free to disregard totally the fact of conviction. In State v. Mussikee, 101 N.J.L. 268 (Sup. Ct. 1925), the jury, after being charged that conviction of crime may be shown for the purpose of affecting the credibility of a witness, was instructed: "There is nothing mandatory about it. You may, if you see fit, weigh the prior conviction and give such credit to his testimony as you think ought to be given." Justice Parker held that the instruction tended to create a false impression in the minds of the jury with respect to the effect of the conviction on credibility; it was equivalent to saying that it made no difference whether the witness had been convicted of crime or not  the jury could, if it saw fit, weigh the prior conviction, but if it did not see fit to weigh the conviction, it was not required to do so. Such a charge was held error, the court stating that the jury should, "at least, take it into consideration and ask themselves whether such conviction does affect the credit of the witnesses, and, if so, to what extent; but they are not justified in refusing to consider it at all." 101 N.J.L., at page 274.
Neither the requested charge, nor the charge as given, adequately stated the precise weight to be given by the jury to the fact of prior conviction. The requested charge is deficient in that it does not point out that the jury should give consideration to the prior conviction as affecting credibility, *459 and that only after doing so and determining whether and to what extent it does, the jury may then give credibility to the witness' testimony. As for the court's charge, the simple instruction that the purpose of introducing evidence of prior conviction of crime is "as affecting his [defendant's] credibility," may imply that such conviction necessarily affects credibility, so that the jury must give less weight to defendant's credibility than it would had he not been convicted of a crime  in short, that the prior conviction necessarily adversely affects his credibility.
A requested charge must be correct in law before it can be complained that its denial was error. Accordingly, there was no error in denying the charge requested by defense counsel. Moreover, there was no specific objection to the refusal so to charge. We find no error here.
Nor was there any objection to the charge as given, so that if there was any error, it was waived, R.R. 1:5-1(a), 2:5; State v. Picciotti, 12 N.J. 205, 211 (1953). Defendant, however, contends that the instruction now under attack for the first time amounted to "plain error" under the rule just cited. We do not so find in the circumstances of this case. Defendant was not prejudiced by the charge. It seems entirely clear that he was convicted because of the overwhelming proofs against him adduced by the State's witnesses. If he was not believed by the jury, it was for that reason, and not because of any prior conviction.
Defendant next argues that the search and seizure to which he was subjected violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution and contravened Article I, paragraph 7 of the New Jersey Constitution of 1947, citing in support, Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). He complains that his apartment was searched without the benefit of a search warrant, although one could readily have been obtained in the very court house where he was first taken by the detectives before going with them to the apartment. Accordingly, the search was illegal, and the real evidence *460 it produced should not have been used against him at the trial.
The fact is, as defendant admitted when he took the stand, that when Detective Mueller suggested a visit to his apartment, he said "Let's go." He further testified that he voluntarily unlocked his apartment door for the officers and invited them to "look all you want." Concededly, the detectives had no search warrant, but the record does not support defendant's argument that he was forced or "victimized." On the contrary, he invited the search and did not object to it, thereby waiving the right which he now claims. Cf. State v. Borrell, 18 N.J. 16, 23 (1955).
Even assuming that the search was unlawful, it still remains the established rule in this State that proof otherwise admissible will be received notwithstanding the illegality of the search and seizure. Eleuteri v. Richman, 26 N.J. 506, 509 (1958), affirming 47 N.J. Super. 1 (App. Div. 1957), where some of the previous decisions of our highest court are cited in support of the proposition. (And see our extended discussion of the question when Eleuteri was before us, 47 N.J. Super., at page 9 ff.) The court properly charged the jury on this point.
Finally, defendant charges that the remarks of the prosecutor in the course of his summation prejudiced his cause and deprived him of a fair trial. The claim here is that the prosecutor referred to him as being "a peddler and seller of narcotics." The record does not support the contention. What happened in the course of the summation was this:
"* * * Now, this is a horrible thing we are dealing with. Are you going to let  after all this proper evidence has been introduced and after a case has been made out beyond a reasonable doubt, are you going to let the defendant go out again "
Defense counsel immediately interrupted with an objection that this was not fair comment. The trial judge remarked that the summation had been perfectly proper up to that *461 point, and it was no concern of the jury what happened to defendant after he left the courtroom in the event of his being found not guilty. He then said: "The jury's concern is only with regard to the evidence in this case, that's all. They are not to be concerned with * * * what happens after they have returned their verdict. I will strike that part of the summation from the record, and I will instruct the jury to disregard it."
This is a far cry from the representation made by defendant in his brief that he was called a "peddler and seller of narcotics." The assistant prosecutor in charge of the case never finished his sentence, for he was cut short when defendant's attorney interrupted to object. The prosecution should not, of course, have ventured upon the remark it did. However, irregular comments upon matters outside the evidence made by a prosecutor in summation are not grounds for reversal unless they affect defendant's substantial rights. State v. Vaszorich, 13 N.J. 99, 119-120 (1953); State v. Bogen, 13 N.J. 137, 139 et seq. (1953); and see State v. Johnson, 31 N.J. 489 (App. Div. 1960). We do not agree with defendant that his rights were substantially affected by the assistant prosecutor's unfinished comment, and particularly is this so in view of the trial judge's specific instruction that the jury was to disregard it. Here, again, there is no need to invoke the "plain error" provision of R.R. 1:5-1(a), 2:5.
The judgment of conviction is affirmed.