FRED PROUT ET AL., DEFENDANTS IN ERROR, v. BER-NARDS LAND AND SAND COMPANY, PLAINTIFF IN ERROR.

Submitted March 22, 1909—Decided June 14, 1909.

Cross-examination on matters either directly in issue or directly rele-vant to the issue is a matter of right. and its exclusion is error.

On error to the Supreme Court.

For the plaintiff in error, *Harry V. Osborne.*

For the defendants in error, *Clark & Case.*

The opinion of the court was delivered by

PARKER, J. The plaintiffs below are a firm of attorneys, and sued the defendant corporation, whose business is indi-cated by its name, for services in making a search and ab-stract of title to a tract of land owned by it, and for disburse-ments connected therewith. The declaration consisted of the common counts in *assumpsit,* with a bill of particulars an-nexed, containing only one item, as follows: "June 12, 1906. To making search showing title of the Bernards Land and Sand Company at Basking Ridge, N. J., and money paid out for expenses in making same, $650." There was a verdict and judgment for plaintiffs for the full amount claimed, with interest.

The plaintiffs' evidence showed that no price had been agreed on in advance, but that in July, 1902, one of the

plaintiffs was asked at a company meeting what he would charge to make a complete search of the land referred to, for the company, and that he refused to set a price, offering to do the work either on the per diem basis or charge what it was worth when he had finished it; that the matter was laid over for consideration, and several weeks later Mr. Dunster, the vice president and manager of the company, saw plaintiff and said there had been another meeting and the company had decided to have plaintiffs make the search and he wanted them to make it as cheap as they could.

The abstract of title was not tendered to the company until September, 1906, after a lapse of over four years, during which period important changes had taken place in the defendant corporation. It had been organized and managed as a close corporation, the board of directors being limited to three persons who apparently held all or most of the stock; one of these was Mr. Dunster who, at the time the abstract and bill were presented, was the only survivor of the original incorporators, and had been a director until April, 1906, when the board was reorganized after the death of the other two directors and Dunster was dropped. The new board refused to accept the abstract of title and denied that the corporation had ever ordered the search. The trial judge submitted this question to the jury and we find no error in his rulings on evidence or instructions to the jury so far as relates to this branch of the case. The verdict for plaintiffs, therefore, amounted to a finding that they had been regularly employed in 1902 to make the search.

But another important issue was raised as to the reasonable value of the services performed by the plaintiffs. On this issue the defence was twofold. It was denied in the first place that plaintiffs had performed any such amount of work as they claimed to have done; and alleged in the second place that the search if ordered was to have been made promptly and that the delay for four years in presenting the abstract of title had greatly diminished its value to the defendant. Both these issues were opened on cross-examination of William Prout, one of the plaintiffs, and in the exclusion of ques-

tions bearing on those issues on that cross-examination we find error prejudicial to the defendant. As to the work actually performed, and its value, the witness testified to work done off and on in the county clerk's office and at his own, during the four years. He testified generally to the total amount of time and money spent. On cross-examination he stated that his firm had never made any book entries against the defendant, but that he kept the record of work and disbursements on this matter in his head. The following questions were then asked:

Do you say that you never kept a record of the work you did in any case?

Do you keep a record of the time expended by you or devoted by you in the conduct of your business to various matters?

When you do work for your clients, do you keep a ledger account, charging them for services?

Do you keep, when you do work for your clients, an account showing the amount of your disbursements in connection with the matter done?

Each of these questions was objected to and overruled and an exception taken and the rulings assigned for error.

The discretion of the trial court in regulating and limiting the range of cross-examination is very great, and extends, among other things, to matters affecting the credibility of the witness and matters not directly relevant to the issue. So in *Jones* v. *Insurance Company,* 7 *Vroom* 29, 42, which was a suit on a fire insurance policy, it was held no error to exclude questions on plaintiff's cross-examination as to how much he was worth, and what debts he owed, these matters not being directly relevant to the issue and so within the court's discretion. But as to matters directly in issue or directly relevant to the issue, there is no discretionary power. The rule is stated in *Jones Ev.,* § 821, thus: "Although the court may exercise a reasonable discretion in regulating or limiting the cross-examination, yet it is clearly error to exclude cross-examination on subjects included in the examination in chief, where such ruling is prejudicial. So far as such cross-exami-

nation of a witness relates either to facts in issue or facts relevant to the issue, it may be pursued by counsel as a matter of right." See, also, *Langley* v. *Wadsworth,* 99 N. Y. 61, 63.

Cases where the trial court has erred in excluding cross-examination on matters of right, are rare. *Eames* v. *Kaiser,* 142 U. S. 488, was a case in which one of the issues was whether a party whose property had been attached had fraudulently attempted to dispose of his property and it appearing that just after the attachment he had turned a large amount of accounts receivable into negotiable paper, it was held error to exclude a question on cross-examination as to what he had done with that paper. In *Colloty* v. *Schuman,* 44 *Vroom* 92, an action on contract, the plaintiff testified to transactions with defendant as with a principal, and it was held error to exclude cross-examination tending to show that plaintiff knew he was dealing with an agent. See, also, *Gaunt* v. *State,* 23 *Id.* 178; *Green* v. *Skoqvist,* 28 *Id.* 617.

The present inquiry being whether the excluded questions above quoted were relevant to the issue, we have no doubt that they were. If they had been answered, the defendant might have shown that the plaintiffs in their general business kept a complete set of books containing accounts with their clients, and regularly and systematically made charges of work done which were carried into ledger accounts and from which their bills were made up. If such a state of facts appeared in connection with the other facts that no account of either services or disbursements was kept with the defendant, and no daily entries made of work done on this voluminous and expensive search, the absence of any such account and entries would go far to discredit their claim with the jury both as to what work was done, and its value, as not worth charging up. The overruling of these questions was therefore error.

So, also, as to defendant's inquiry whether plaintiffs knew, or were told, the purpose for which the search was wanted. The questions follow:

"*Q.* What did you think they wanted that search for—did you know?

[Objected to.]

"*Q.* Do you know what they wanted it for?

"The Court—It doesn't make any difference."

To this ruling the defendant took an exception.

Again it was asked:

"*Q.* Did he (Dunster) say what they wanted it for?"

This was overruled by the court, and an exception taken.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

"*Q.* Did he say anything with reference to when he wanted that search completed?

"*A.* I don't recall that he specified any time when he wanted it completed, no.

"*Q.* Did he say anything about what they wanted the search for?"

This was overruled by the court and exception entered; and the exclusion of this evidence is also assigned for error.

The theory of these questions was perfectly plain. If the defendant wanted a search, it presumably wanted it promptly before selling off its property, so as to avoid the danger of selling or warranting a defective title; and if defendant could have shown, for example, that time was of the essence of the contract, it might perhaps have been justified by the long delay in assuming that the contract was abandoned and in rejecting the abstract when tendered; or at least it could be argued that an abstract which ought to have been delivered promptly but which was tendered only after four years could not be worth so much to defendant as one furnished with reasonable promptness. So, also, if the witness had been compelled to testify that he was told in 1902 that the search was needed to satisfy the company that it could safely make certain sales of land, and it appeared that these sales had to be made in the end without it, or were lost for lack of it, the value of the abstract would be materially diminished. The line of inquiry suggested by these questions was both material and relevant to the issue, and the court was required by law to admit them.

For these errors the judgment will be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GAR-RISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOOR-HEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON, J.J.    16.