THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. KRAUS MOR, PLAINTIFF IN ERROR.

Submitted July 3, 1913—Decided February 18, 1914.

1. The settled practice in this state is to follow a general assignment of error by a specification of the errors in the record and proceedings, since the adverse counsel is entitled to know what the exception is, and the court is not required to search for errors not definitely pointed out.

2. Under section 44 of the Criminal Procedure act (2 *Comp. Stat.*, p. 1834), the legal sufficiency of an indictment cannot be questioned unless the objection was made before the jury was sworn.

3. Under an indictment for selling coal by short weight with intent to defraud, testimony introduced by the state tending to show that defendant. shortly before the time he made the sale, made other short weight sales by the same scales to other persons, was competent only to negative that the sale made to the prosecuting witness was the result of accident or mistake.

4. Defendant's driver having testified on cross-examination, without objection being made by his counsel, that he did not on the day following the sale of coal to the prosecuting witness, and while on his way to deliver a load of coal, ask certain third persons why they did not want to see his ticket, and did not test him then when he had a full load on, the state, on rebuttal, called such certain third persons who testified, against objection made by defendant's counsel, that the driver asked them if they did not want to see his ticket and why they did not test him then when he had a full load on. *Held*, that the cross-examination was improper and wholly collateral to the issue, and the state thereby made the driver its own witness and was bound by his answers,

and that the testimony of such certain third persons was incompetent as evidence that the defendant knew that the coal sold the day before was short in weight, was hearsay and inadmissible and constituted harmful error.

On error to the Essex Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the plaintiff in error, *Frank E. Bradner.*

For the state, *Louis Hood,* prosecutor of the pleas.

The opinion of the court was delivered by

KALISCH, J. The plaintiff in error was tried and convicted in the Essex Quarter Sessions under an indictment, containing two counts, which in substance charged that he did unlawfully sell to one W. D. M. a certain quantity of coal of the weight of one thousand seven hundred and eighty-five pounds, as being of the weight of two thousand pounds, he, the said Kraus Mor, then and there well knowing said quantity of coal to weigh one thousand seven hundred and eighty-five pounds only, with intent to defraud the said W. D. M. and to the injury of the said W. D. M., contrary, &c.

The indictment was founded upon section 26 of an act entitled "An act to establish a uniform standard of weights and measures in this state, to establish a department of weights and measures, and to provide penalties for the use of other than standard or legal weights and measures." *Pamph. L.* 1911, *p.* 414.

Section 26 provides: "Any person who injures or defrauds another by using, or causing to be used with knowledge that the same is false, a false weight, measure or other apparatus for determining the quantity of any commodity or article of merchandise, or sells or exposes for sale, less than the quantity he represents, is guilty of a misdemeanor."

We are asked by the plaintiff in error to pass upon the legal sufficiency of the indictment and upon the constitutionality of

the section upon which the indictment was based, though the record discloses neither an assignment of error or specification of cause for reversal that raises either question, unless they are raised, as contended for by the plaintiff in error, by the prayer for relief in the assignment of errors which is "that the judgment and sentence, by reason of the aforesaid errors and all other errors appearing in the record and proceedings aforesaid and in the giving of judgment and passing of sentence as aforesaid be reversed, annulled and held for nothing," &c. But this is manifestly not so. The prayer is not equivalent to a general assignment of error which in express terms declares that there is manifest error in the record and proceedings in that it appears by the record aforesaid that the said judgment aforesaid is given for the State of New Jersey, and against the said A. B., when by the laws of the land and of the said State of New Jersey, the judgment aforesaid ought to have been given for the said A. B., &c.

And the settled practice was and is to follow this general assignment, by pointing out specifically the errors in the record and proceedings. In *Donnelly* v. *State, 2 Dutcher,* Chief Justice Green (on *p.* 512) said: "So, in the assignment, the grounds of error should be specified. The adverse counsel are entitled to know what the exception is, and the court are not required to search for errors not definitely pointed out."

But even if there had been a proper assignment based upon the insufficiency of the indictment, in that it failed to set out any criminal offence, it could not have availed the defendant, on the record before us. For it appears that no motion was made in the court below by counsel for plaintiff in error to quash the indictment for that or any other reason, before the jury was sworn.

The failure to have done this precludes the plaintiff in error from raising any objections to the legal sufficiency of the indictment. 2 *Comp. Stat., p.* 1834, § 44; *Mead* v. *State, 24 Vroom* 602; *State* v. *Sharkey, 44 Id.* 491.

We are now brought to a consideration of the objection made by the plaintiff in error to the admission of testimony introduced by the state tending to establish that the plaintiff

in error, near to the time when he made the sale to Morris, made other sales of coal by the same scales to various persons, which were less than the legal weight called for. We think this objection was properly overruled. For such testimony was competent for a single purpose only, and that was to negative that the sale of short weight made to Morris was the result of accident or mistake.

Lastly, the plaintiff in error complains that he was prejudiced and injured in maintaining his defence on the merits, because Frank Osmun and Horace B. Holcombe, witnesses for the state and recalled by it, on rebuttal, were permitted by the court to be asked and to answer on their direct examination, by the prosecutor of the pleas, against objections interposed by defendant's counsel, the following questions: "Did he (referring to one Healey, a witness for the defence) call to you from the wagon and say this: 'Why don't you want to see my ticket?' 'Why don't you test me now?' 'I have got a full load on to-day.' Did he say that?" To which, after the objections interposed by defendant's counsel were overruled by the court, the witnesses answered, "Yes." Now, from an examination of the case, it appears that Andrew J. Healey was a driver in the employ of the defendant, and was the person who delivered the coal to Morris on the 16th day of December, 1912, and which the jury found was short in weight, and that he was driving a wagon load of coal for the defendant, for delivery to some other customer, on the following day, when Osmun and Holcombe say that he made the remarks testified to by them, on rebuttal. Healey had been asked, on his cross-examination, without any objection interposed by defendant's counsel, whether he had not made such statements as were embodied in the questions put to Osmun and Holcombe, and after saying that he did not know and that he did not remember, finally said that he had not. A close scrutiny of the direct testimony given by Healey makes it manifest that these questions were not proper cross-examination, but were wholly collateral to the issue. The testimony attempted to be elicited from him was not evidential. It was clearly incompetent as evidence against the defendant that he had knowledge that the

coal sold to Morris the day before was short in weight. It was irrelevant. The issue that was being tried under the indictment was, whether the defendant was guilty of having sold to Morris, on the 16th day of December, coal which was short of the true weight represented by him, the defendant. The testimony of Osmun and Holcombe, as to what the driver said to them, in so far as it related to the defendant's acts regarding the weight of the coal sold to Morris, either directly or inferentially, was clearly hearsay and was harmful to the defendant. But, as has been already pointed out, it was not proper cross-examination, and, therefore, in asking the questions, the state made Healey its own witness, and according to the well-settled rule of law, was bound by his answers. But even though the cross-examination of the witness was improper, the answers given by the witness show them to have been harmless, and if the prosecution had not pursued the matter any further, no mischief would have resulted. But the state in recalling Osmun and Holcombe to rebut the answers given by Healey, and the court having permitted this against the objections of the defendant's counsel, constitute error which necessitates a reversal of the judgment.

The law is firmly settled that where a party has the right, for the purpose of impairing the credit of a witness as to collateral matters, to ask questions as to those collateral matters, but having asked and obtained answers, he must abide by the answers given; other witnesses could not be called to prove such answers untrue. *Stokes* v. *People*, 53 *N. Y.* 164; 13 *Am. Rep.* 492.

In 1 *Greenl. Ev.* (*Ed.* 1896), § 449, the learned author enunciates the legal rule to be as follows: "But it is a well-settled rule that a witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony. And if a question is put to a witness which is collateral or irrelevant to the issue, his answer cannot be contradicted by the party who asked the question; but it is conclusive against him." The author cites numerous American and English cases in support of the text.

In *Bullock* v. *State,* 36 *Vroom* 557, Chief Justice Depue, speaking for the Court of Errors and Appeals (on *p.* 575), said: "On the examination of the accused by his counsel he was asked the question whether he had ever any trouble with anyone. On cross-examination counsel of the state asked him whether he did not have a dispute with Campbell and draw a razor on him in the stall and attack him with a pitchfork. Objection was taken to this testimony, and the objection was overruled. This evidence was incompetent, but if at all competent on cross-examination, being irrelevant and immaterial, the state was bound by the answer of the witness, and it laid no foundation for the right to contradict him in that respect by the testimony of Campbell." Although the case cited was not as strong for the application of the rule of evidence discussed, as the one under consideration, it is highly illustrative of the principle of evidence involved and the rigor with which it must be observed. The injury which was done the defendant in this case is quite palpable from what was said at the time when the questions were put to Osmun and Holcombe by the counsel of the state. Counsel of the defendant said: "I object. That is purely collateral. This witness cannot contradict that." Counsel of the state replied: "It goes directly to the witnesses' testimony as to whether he was consciously shortweighted that day or not. It goes directly to the very gravamen and weight of his testimony."

The Court—"Objection overruled." The witnesses, Osmun and Holcombe, then testified that Healey made the statements attributed to him. Thus we have the counsel of the state pointing out that the questions were not only asked of Osmun and Holcombe for the purpose of contradicting Healey, but also to establish by what was testified to by them, as to what he said that he was conscious that he was delivering short weight in coal for the defendant on the day before, the offence for which the defendant was then being tried. But in whatever light the testimony is regarded, it clearly insinuates that the coal delivered on the day before to Morris, by the defendant's driver, was short weight. This was harmful and prejudicial to the defendant.

The judgment will be reversed and a *venire de novo* awarded.