THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. CARMINE CORRADO, PLAINTIFF IN ERROR.

Argued April 5, 1934—Decided May 4, 1934.

For the plaintiff in error, *Robert H. Brenner*.

For the state, *William George*, first assistant prosecutor (*Daniel T. O'Regan*, prosecutor of the pleas, on the brief).

The opinion of the court was delivered by

PARKER, J. The plaintiff in error was convicted of murder in the second degree, and brings this writ of error. There is a certificate of the entire record of proceedings at the trial, pursuant to section 136 of the Criminal Procedure act.

The indictment contained counts of murder, manslaughter, and assault and battery, but the last was abandoned at the trial.

The first point argued is that the verdict was against the weight of evidence. We are clear that it was not. It was admitted that the deceased, a young man named Disteso, came to his death from a gun shot wound inflicted by an automatic pistol in the hand of the plaintiff in error, defendant below. The defense seems to have been a combination of self defense and accident. The shooting admittedly occurred in the course of an assault by deceased Disteso upon one Romano. As to the general facts of this assault, the evidence for the state and for the defendant are in substantial accord except that defendant claimed that it took place inside his saloon or cafe in Hoboken, and the evidence for the state tended to show that it took place in the street outside. The state's version was that while Romano and several others were sitting in the saloon playing cards, Disteso opened the front door and called for Romano, who answered: That Disteso asked him to come outside, which he did and was there assaulted and beaten with some blunt instrument not produced at the trial; that Romano called for help and defendant ran out of the saloon with his automatic, and shot Disteso. The expert testimony indicated that the muzzle of the pistol was within two inches of Disteso's side. Defendant ran to his back yard and threw the pistol on a wood pile, where it was found shortly afterwards. Like other automatics, it ejected the shell when fired. An exploded shell was later found in the street near by. The story of the defendant was that the beating was being inflicted inside the saloon; that Romano called for help; that defendant thinking he saw the outline of a pistol in Disteso's pocket,

took his gun out of the drawer for possible self defense and came out from behind the counter holding it in his right hand, pointing it at deceased as a threat, or warning, and trying to parry the blows of the club or bar, whatever it was, with his left hand, when the pistol accidentally went off. Granting that if the jury believed defendant's version of the occurrence, a verdict of acquittal, or of manslaughter would have been the logical result, still it was for the jury to ascertain the facts from this conflicting evidence. If they accepted the state's version, there was ample evidence to support it, and we see no reason whatever for disturbing the verdict.

The second point challenges three rulings of the trial court, admitting testimony for the state over objection. The first of these was permitting Romano to testify that defendant was known as "Curly." The objection was that "it might be prejudicial to this defendant." It is now suggested that a nickname connotes a criminal record of character. The question was answered before objection, but in any event the objection seems too frivolous to merit discussion.

The defendant testified on direct that when Disteso was assaulting Romano, he said to Romano, "you take that skunk [referring to defendant] around with you in the car." On cross he was asked: "And he called you a skunk? *A.* Yes. *Q.* And that made you mad? *A.* [After objection] He does not make me mad, he got me suspicious * * *. *Q.* You were not mad at all? *A.* No. * * *. How did it make you feel when he called you a skunk? [objected to as already answered, and allowed]. *A.* Well, I don't feel so good."

The objection now made is that the question was irrelevant and immaterial. It was neither, as it bore directly on the issue whether the defendant shot accidentally, or in defense of Romano against a murderous assault, or because provoked by an opprobrious epithet. Moreover, this objection was not made at the trial, and the objection then made is not now argued.

Third (assignment and specification No. 8) that on cross-examination of defendant the court allowed the question:

"*Q.* Did you tell Inspector Kiely the truth about what happened two weeks before?" To which the witness answered: "I remember telling Inspector Kiely the trouble I had that I repeated to Captain Sullivan."

The objection at the trial was that Inspector Kiely had said he had never taken up the case with the defendant. That objection is now pressed, and also the objection, not made at the trial and which we therefore disregard, that the question was immaterial and irrelevant. As to the original objection, the question was properly allowed on the basis of a written statement produced by Kiely and admitted in evidence as *Exhibit S-20,* which Kiely swore he had taken down in writing as made by defendant, and had been signed by him.

Point 3. The court overruled a question to the state witness Romano on cross-examination. as follows:

"*Q.* You were also threatened by another member of his family at the time you received those blows, were you not?"

This was objected to, and excluded as not proper cross-examination. Counsel undertook to explain to the trial court the purpose of the question, as follows:

"Mr. Ziegener: It is merely showing the intent, or showing the cause of this condition. I think we should be permitted to show it.

"The Court: What do you mean, show the cause of this condition?

"Mr. Ziegener: This is an absolutely unexplained incident as far as this assault is concerned, as far as this witness is concerned.

"The Court: The fact that he may have had trouble several years before?

"Mr. Ziegener: Yes.

"The Court: With the deceased?

"Mr. Ziegener: To his knowledge, yes, and connected up as I think we can connect it up.

"The Court: Other members of the family?

"Mr. Ziegener: Yes, sir."

The question was overruled. The explanation now made in the brief is:

"The attack upon Romano had not been explained to the satisfaction of anybody and the plaintiff was trying to bring out that Romano had been threatened by a member of Disteso's family. The purpose was to show that Romano was afraid to testify to the truth; that he was afraid that if he told the truth and the plaintiff were acquitted, the Disteso family, or some member thereof, might seek vengeance and injure or kill him. Romano, by refusing to tell the truth, was protecting himself from the Distesos. If the plaintiff were permitted to ask the said question and follow it up with similar questions, he might have been successful in bringing out from the witness the truth and might have gotten him to admit that he was afraid to testify to the truth."

Romano had just testified on cross-examination, that a few years before, he had had trouble with defendant's brother, who had assaulted him with a club, leaving a scar still visible. Then followed the question under review.

We incline to think that the exclusion of the question was within the discretionary control of the trial court over cross-examination. But if the ruling was then erroneous, any error in that regard was cured by the witness on further cross testifying fully and without objection, on the subject of the alleged threats.

The fourth and eighth points were expressly abandoned in the argument.

The fifth, sixth and seventh points relate to passages in the judge's charge.

Point 5. The court charged in part: "And I charge you now, gentlemen, that the shooting of a revolver by this defendant at the body of the decedent was an unlawful act against the peace of this state, likely to be attended by the consequence of bloodshed, so that the killing here is presumed to be malicious and is, therefore, murder, unless and until the defendant produces facts and circumstances from which justification, excuse or extenuation may arise."

The substance of the attack on this instruction is that it was tantamount to telling the jury that the defendant was

presumed to be guilty and must prove his innocence. Such is the language of the brief. But we perceive no such vice in the instruction. In fact, the sentence quoted in the assignment of error, with the sentence preceding it in the charge, is taken *verbatim* from the charge delivered in the case of *State* v. *Mangino,* 108 *N. J. L.* 475 (at *p.* 478), and which was approved by this court. And we there said: "The rule is entirely settled in this state, that the fact of killing being first proved, as was done in this case, the law presumes it to have been founded on malice until the contrary appears, and all circumstances alleged by way of justification, excuse or alleviation must be proved by the prisoner, unless they arise out of the evidence produced against him." The instruction in question, taken with its context, has the express sanction of this court where it is applicable to a situation in which it is open to the jury to find in the particular case; and such was the situation here.

Point 6 is based on assignments 12 and 13. No. 12 is a general statement that the court misstated the facts and evidence, &c., and as an assignment of error has no legal force. No. 13 charges an erroneous and harmful misstatement of the evidence in saying that defendant "sneaked around and got his gun" when the testimony was that he "sneaked his gun into his pocket." We can see no harmful error here, particularly as the court was careful to instruct the jury not to rely for the facts on any statement of them by the court, but upon their own recollection of the testimony.

Point 7 based on assignments 14, 15 and 16, brings up certain comments of the trial judge on the evidence, interrogative and argumentative in character, as calculated to influence the jury unfavorably to the defendant. These comments were in no way erroneous. The right of the trial judge to give the jury the benefit of his individual view of the evidence, so long as he is careful to avoid controlling them by a binding instruction, is settled in the state beyond peradventure. On this point it is sufficient to cite the case of *State* v. *Overton,* 85 *N. J. L.* 287, where at page 292 will be found lengthy quotations from the charge, and where

at page 294 this court stated the rule, citing several decisions, that "it is always the right, and in many cases the duty, of the trial judge to express freely the impressions made on his mind by the evidence, thus giving the jury the benefit of his judicial experience, and suggesting to them points of weakness or strength that they might otherwise overlook, provided always the ultimate decision of disputed matters of fact is fairly left to them."

The comments in the present case were in nowise violative of this rule.

Point 8 is abandoned as already noted.

Point 9 covers nine separate assignments and specifications, all based on refusals of requests to charge. There were forty requests, largely repetitious. The judge charges the fifth, tenth, twelfth, fourteenth, sixteenth, seventeenth, twenty-first, thirty-second, thirty-seventh, thirty-eighth, thirty-ninth and fortieth; twelve in all. Twenty-two others he said he had covered; the other four were refused except as charged. All the refusals to charge in form as requested are assigned for error. Nine of these assignments are argued, the others apparently waived. We have examined with care the charge and the requests, and find that of the nine, five were adequately covered in the charge, and four faulty in point of law and therefore properly refused. Not one of them is specifically argued; they are grouped together in the brief, and followed by the general assertion that they were not covered, were proper requests, good in law; and that "if the court had charged as requested, the defendant might have been acquitted." Only one of these, No. 15, merits particular discussion. It reads as follows: "That, if the testimony in this case, in its weight and effect, be such that two conclusions can be reasonably drawn from it; the one favoring a defendant's innocence and the other tending to establish his guilt, the law, justice and humanity alike demand that you, as a jury, shall adopt the former and find the defendant not guilty."

The proposition contained in this request is applicable only in cases based wholly on circumstantial evidence. 16 *C. J.*

763, § 1568; *Ibid., p.* 1011, § 2436, and even in such cases, where the rule of reasonable doubt is properly charged, the court is not bound to charge the two-theory proposition. 16 *C. J.* 764, *note* 54 (a) : and page 1012. In the present case there was ample evidence of the shooting from the lips of eye witnesses; and the court charged the reasonable doubt rule over and over again, of its own motion and in response to requests.

Finally, that the court erred in refusing "a new trial upon [defendant's] application for arrest of judgment and a new trial," which application was made on the grounds (a) that defendant did not receive a fair and impartial trial—which means nothing as a legal ground : and (b) shortly stated, that at one point in the trial there was a sudden uproar in the court room and an assault on the prisoner. After the police had intervened and restored order, a recess was taken, and then the trial proceeded. Neither the state nor defendant moved for a mistrial or objected to proceeding. The mother of the deceased had fainted, and his brother assaulted the prisoner. Three weeks after verdict and sentence, defendant petitioned for arrest of judgment and new trial. As to the first it need only be said that judgment can be arrested only for some cause appearing on the record. *Powe* v. *State,* 48 *N. J. L.* 34; *State* v. *Lehigh Valley Railroad Co.,* 94 *Id.* 171; as to the second, the matter of granting or refusing a new trial was wholly within the discretion of the trial court, and we perceive no abuse of that discretion, particularly as defendant was apparently willing to proceed with the trial at the time and take his chances of a verdict.

We find no injurious error and the judgment is accordingly affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, LLOYD, CASE, BODINE, DONGES, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

*For reversal*—HEHER, J. 1.