8 N.J. Super. 106 (1950)
73 A.2d 354
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH CUTRONE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 17, 1950.
Decided May 24, 1950.
*107 Before Judges JACOBS, DONGES and BIGELOW.
Mr. Sidney Simandl argued the cause for appellant (Mr. Harold Simandl, attorney).
Mr. C. William Caruso argued the cause for the State (Mr. Duane E. Minard, Jr., Essex County Prosecutor).
The opinion of the court was delivered by BIGELOW, J.A.D.
The appellant, convicted of rape, argues that the verdict was against the weight of the evidence and *108 that the learned trial court erred in refusing to instruct the jury as requested.
The alleged victim of the offense, Dolores Caldwell, testified as follows: She was employed at the store of L. Bamberger & Company in Newark. On December 26, 1947, between 8 and 8:30 A.M., at the employees' entrance at Halsey and Bank Streets, as she was entering the store, Cutrone suddenly appeared and grabbed her wrist. "He said he wanted me to come to his house, and he said he got a razor blade, and he says if I don't he is going to cut me up." So she walked with Cutrone one block to Market Street, west on Market Street, across Washington Street and Plane Street to Comes Alley, and up Comes Alley half a block to No. 15 where defendant had rooms on the third floor. All the way he kept tight hold of her wrist. In his rooms she screamed but no one came to her rescue and he forced her to have intercourse with him. About 11:30 or 12 o'clock, they left Cutrone's rooms and walked to the Adams Theatre on Branford Place between Broad Street and Halsey Street. There they stayed to see the show twice, "until about four o'clock, I guess." Then she took a bus for her home two or three miles away, but "the bus got stuck at Lexington Street. So I had to walk home from Lexington Street and I didn't get home until about 8:30."
Anyone familiar with Newark will recognize all the streets mentioned, except Lexington Street and Comes Alley. They are very busy thoroughfares. The girl admitted that there were "a lot of people on Market Street" as defendant led her along it. On duty from 7 A.M. to 2 P.M. that day, at Market and Halsey Streets, was Police Officer Zimmer; at Market and Washington Streets was another officer; and at Halsey Street and Branford Place, a third uniformed policeman.
The doctor who examined Dolores two or three days later found evidence, not conclusive yet tending to show that she had had sexual intercourse, but how recently he could not tell. Her physical condition also indicated that any intercourse *109 had not been frequent. Her age is not given in the evidence, but it does appear that she had stopped attending school only two years earlier. Her photograph shows a young girl. She testified that she had called at Cutrone's flat many times but always with her younger sister, who did washing for him, or else with another girl. On one occasion, when they did not find him home, she pushed under his door a note reading, "Joe, I was here. Where were you, you louse?"
The defendant, who was 58 years old, had often called at the Caldwell home. He testified that at about 8:40 A.M. on the day in question, while he was dressing, Dolores arrived at his flat. He denied in detail her narrative of what happened in his rooms, and especially that he forced her to have sexual intercourse with him. They left the flat together at 9:20 or 9:30, according to Cutrone, and went to a store where he bought her stockings and gloves. After eating at a restaurant, they went to the theatre; and later, to a luncheonette. Finally, he gave her five dollars for her mother and some silver for herself. Not satisfied, she insisted that he give her more money, and he promised to do so. And so she took her bus for home. He testified that he started buying clothes for Dolores in October, 1946; that thereafter she came to his home at least once a week  generally alone.
From the narratives of Cutrone as well as of Dolores, it seems likely that they had intercourse with each other on the occasion mentioned in the indictment. The question is whether it was against her will. The girl's assertion that she was compelled by threats and force to go to defendant's rooms, is incredible. We are satisfied that she went willingly, whether alone, as he testified, or in his company. But this does not necessarily indicate that she went for the purpose of intercourse or consented to it. However, her continuing in Cutrone's company throughout the day,  in the streets, and at the theatre,  does negative the existence of any strong resentment against him such as she would presumably have had, if indeed he had compelled her to submit to sexual intercourse. On the whole, the verdict appears to us to be against the *110 weight of the evidence, and so the judgment will be reversed. We will deal, however, with the second point urged for reversal as it has been fully argued.
The defendant requested the court to charge the jury as follows:
"A reasonable doubt may be engendered by lack of evidence. If the State has failed to produce evidence sufficient to satisfy you of the guilt of the defendant beyond a reasonable doubt, he is entitled to an acquittal, even though that doubt may be engendered merely by the lack of production of evidence by the State."
The learned trial judge declined, evidently considering that the charge as a whole, and especially the part dealing with reasonable doubt, was sufficient protection for the defendant:
"This defendant, as are defendants in all criminal cases, is presumed to be innocent until proven guilty beyond a reasonable doubt of the crime charged and of each and all of its elements. The burden of that proof is on the State, and it never shifts; it remains on the State throughout the trial of the entire case. A reasonable doubt is not a mere possible or imaginary doubt; it is that state of the case, where, after an examination and comparison of all of the evidence you cannot say that you feel an abiding conviction to a moral certainty of the guilt of the defendant."
The request to charge embodied a correct statement of the law. State v. Andrews, 77 N.J.L. 108 (Sup. Ct. 1908). In New York, it has been held that a refusal to charge a request similar to that presented by Cutrone, was not error. Peo v. Radcliffe, 133 N.E. 577 (1921). Defendant cites to the contrary Stafford v. State, 31 So.2d 146 (Ala. 1942), and State v. Anderson, 228 N.W. 353 (1929), and other Iowa cases. And see Annotation, 67 A.L.R. 1372. But a refusal to charge is not ground for reversal, if the charge delivered includes the substance of the proposition contained in the request. State v. Pisaniello, 88 N.J.L. 262 (E. & A. 1915); State v. Fischer, 97 N.J.L. 34; affirmed, 98 Id. 293 (1922); State v. Burrell, 112 N.J.L. 330 (E. & A. 1934). Thus it has been held where the court has fully instructed the jury on burden of proof and reasonable doubt, the court need not charge that the jury should endeavor if *111 possible to reconcile all the circumstances of the case with the presumption of innocence. State v. Schilling, 95 N.J.L. 145 (E. & A. 1920). Or that, if two conclusions can reasonably be drawn from circumstantial evidence, the one favoring innocence should be adopted. State v. Corrado, 113 N.J.L. 53 (E. & A. 1934). Or that the indictment is not evidence against the accused. State v. D'Orio, 136 N.J.L. 204 (E. & A. 1947). The instructions in the instant case as to presumption of innocence, burden of proof and reasonable doubt, plainly mean that the defendant must be acquitted if the State has failed to present sufficient evidence of guilt, whether we classify the deficiency as lack of evidence, want of corroboration, or some defect in the quality of the proofs. We are satisfied that there was no error in the refusal of the court to charge as requested. Indeed, Judge Conlon's instructions to the jury in this case might well serve as a model. He was careful to draw to the jury's attention the defense presented. And in clear and simple language, he outlined the law relevant to the case, and did not deliver a mere mosaic of quotations from the reported decisions of our appellate courts.
The judgment will be reversed because the evidence did not support the verdict.