15 N.J. Super. 450 (1951)
83 A.2d 628
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GEORGE F. BARTELL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1951.
Decided October 3, 1951.
*453 Before Judges McGEEHAN, JAYNE, and WM. J. BRENNAN, JR.
Mr. David I. Stepacoff argued the cause for appellant.
Mr. H. Russell Morss, Jr., argued the cause for respondent (Mr. Edward Cohn, Prosecutor of the Pleas of Union County).
The opinion of the court was delivered by JAYNE, J.A.D.
"In a criminal trial, considering the serious potentialities of a conviction, a defendant should not be required to contend with inadmissible evidence, where it appears that it may have a prejudicial effect upon a court or jury." State v. Dietz, 5 N.J. Super. 222 (App. Div. 1949).
In the County of Union the grand jury presented to the court an indictment alleging in separate counts that on certain specified days in September, 1949, the defendant-appellant unlawfully, knowingly, corruptly and willfully did counsel and procure the names of seven designated unqualified persons to be registered in election districts of the fifth ward of the City of Rahway for the next ensuing general election to be held on November 8, 1949, in violation of the statute. R.S. 19:34-20. The indictment in all instances accused the defendant of knowingly counseling and procuring the registration of each of seven persons who lacked the constitutional residential qualifications to vote in the district. An order of the Union County Court denying the motion of the defendant to dismiss the indictment was affirmed by this court, sub nom. State v. Shipley, 10 N.J. Super. 245 (App. Div. 1950).
At the trial the court dismissed counts one, two, six, and seven and the State abandoned the prosecution of count three. The defendant was found guilty by the jury of the offenses charged in the fourth and fifth counts. The two last mentioned counts related to the alleged unlawful registrations of Jennie M. Watson and her husband, Robert G. Watson.
It is, we think, particularly important to emphasize that at the trial and upon the close of the State's proofs the defendant *454 was exonerated from guilt on the counts which related to the alleged unlawful registrations of John Paskowitz, Jr., Olga C. Paskowitz, Helen R. Cook, Winifred Lovenstein, and Michael J. Lovenstein. Therefore the misdemeanors of which the defendant stood accused at the time he became a witness were that he had willfully counseled and procured the names of Jennie M. Watson and Robert G. Watson to be registered on the registry list of an election district, knowing that such persons or one of them was not qualified and entitled to vote therein.
In our review of the proceedings at the trial in response to the present appeal, our attention centers predominantly on the cross-examination of the defendant which was permitted to be pursued notwithstanding the objections of his counsel.
The boundary line at which the cross-examination of a party as distinguished from a mere witness ceases to be a matter of right and enters into the discretionary zone of the trial judge has been the subject of some divergency of opinion. In Disque v. State, 49 N.J.L. 249, 250 (Sup. Ct. 1887), Chief Justice Beasley remarked: "Since the passage of the statutes capacitating parties as witnesses, it has been the general practice, both with respect to civil and criminal procedure, to permit such testifying party to be cross-examined to the whole case, and such judicial action, being founded in discretion, is not a matter on which error can be assigned."
In Prout v. Bernards Land & Sand Co., 77 N.J.L. 719 (E. & A. 1909), it was stated:
"The discretion of the trial court in regulating and limiting the range of cross-examination is very great, and extends, among other things, to matters affecting the credibility of the witness and matters not directly relevant to the issue. So in Jones v. Mechanics Fire Insurance Company, 36 N.J.L. 29, 42, 7 Vroom 29, 42, which was a suit on a fire insurance policy, it was held no error to exclude questions on plaintiff's cross-examination as to how much he was worth, and what debts he owed, these matters not being directly relevant to the issue and so within the court's discretion. But as to matters directly in issue or directly relevant to the issue, there is no discretionary power. The rule is stated in Jones Ev., § 821, thus: `Although the court may exercise a reasonable discretion in regulating or limiting *455 the cross-examination, yet it is clearly error to exclude cross-examination on subjects included in the examination in chief, where such ruling is prejudicial. So far as such cross-examination of a witness relates either to facts in issue or facts relevant to the issue, it may be pursued by counsel as a matter of right.' See, also, Langley v. Wadsworth, 99 N.Y. 61, 63."
The subject was again discussed in Baus v. Trenton, &c., Traction Corp., 100 N.J.L. 364 (E. & A. 1924), in which Justice Kalisch disagreed with the prevailing opinion concerning the rule of evidence.
It is observed that Chief Justice Gummere, delivering the opinion of the court in State v. Grover, 104 N.J.L. 10, 12 (Sup. Ct. 1927), said: "But the rule upon which the objection was based has no application where the cross-examination is of a person who is a defendant in a criminal trial. In such a situation, when the subject of interrogation is relevant, the extent of the cross-examination of the defendant into pertinent facts, not touched upon by direct examination, is a matter resting entirely in the discretion of the trial court. Disque v. State, 49 N.J.L. 249."
There would seem to be little, if any, doubt that a cross-examination solely tending to test the credibility and trustworthiness of any witness rests in the sound discretion of the trial judge subject only to the consequences of its abuse, State v. Todaro, 131 N.J.L. 59 (Sup. Ct. 1943), affirmed 131 N.J.L. 430 (E. & A. 1944), app. dismissed, 323 U.S. 667, 89 L.Ed. 542 (1944), whereas cross-examination of a party on matters directly in issue or directly relevant to the issue is a matter of right. Fidelity Union Trust Co. v. Sayre, 137 N.J. Eq. 179 (E. & A. 1945).
While a liberal and rigid cross-examination of a defendant in a criminal case is often fully warranted (vide, State v. Hauptmann, 115 N.J.L. 412, 420 (E. & A. 1935)), yet it must have its legitimate boundaries, and we regard the present case as illustrative.
The three inescapable facts are that before the defendant submitted himself to cross-examination, the State had already *456 failed to prove the guilt of the defendant on those charges relating to his alleged corrupt participation in the registrations of Mrs. Cook and Mr. Pascowitz. Indeed, the State had voluntarily abandoned the prosecution of the third count which pertained to the registration of Mrs. Cook. Moreover, the offenses (Watsons, counts four and five) for the commission of which he was then being tried were alleged to have occurred on September 19, 1949, and the offenses (Pascowitz, counts one and two) of which he had been exonerated and concerning which he was also cross-examined were alleged to have occurred three days later on September 22, 1949.
Over the timely objections of his counsel the defendant was directed to answer the following questions propounded by the Assistant Prosecutor:
"Q. I show you Exhibit S-1, being registration No. 349786 bearing signature of Helen R. Cook. Did you take that certificate at the Cook residence in Rahway?

* * * * * * * *
Q. How did you record the answers that Mr. Cook gave you?

* * * * * * * *
Q. You have it there, the sheet. What did Mrs. Cook tell you about her residence in Union County?

* * * * * * * *
Q. What did you do with the registration certificate on the attached sheet after Mrs. Cook signed it?

* * * * * * * *
Q. Did you take her oath on this sheet? Did you cause her to swear to it?

* * * * * * * *
Q. I show you Exhibit S-6 
Mr. Ryan: If your Honor please, may I ask that I might be relieved of being a common nuisance with these objections which your Honor understands I make only pro forma, for the sake of the record, and if the Prosecutor is now going through all these other sheets or registration sheets connected with the other counts in the indictment, the counts that have been dismissed, can it be understood that I make the same objection to that character of examination or questions?
Mr. Morss: That is satisfactory to the State.
Mr. Ryan: Then I won't have to be a common nuisance here.
The Court: All right.
Q. I show you Exhibit S-6 and ask you if you recognize that sheet. * * *
Q. Do you recognize the signature on it? * * *
*457 Q. You know John Paskowitz, don't you? * * *
Q. Did you take registration sheets to his home on Fernote Street in Rahway? * * *
Q. You caused him to register to vote, is that correct? * * *
Q. Did you ask him any questions about his residence? * * *
Q. It is a fact that you knew how long he had been living, didn't you? * * *
Q. You knew how long he lived in Rahway, didn't you? * * *
Q. Who owned that house at 1608 Fernote Street in Rahway? * * *
Q. Who was the attorney? * * *
Q. Do you recall instituting a suit for possession of these premises in the Linden District Court on or about the 6th of October, 1948, against Fred F. Ehrmann?

* * * * * * * *
Q. Do you know when Mr. Paskowitz moved to Rahway?

* * * * * * * *
Q. What did you learn yesterday that you did not know before? * * *
Q. Do you mean that until yesterday you had no idea that Mr. Paskowitz did not move down until January, 1949? * * *
Q. Do you mean to say that in the preparation of your defense you made no effort to learn when Mr. Paskowitz first moved to Rahway? * * *
Q. In other words, despite what has been said in this indictment, you were satisfied with what you knew prior to the indictment? * * *
Q. Did you register Mrs. Decker to vote at her home?"
At the somewhat extensive argument before the court (in the absence of the jury) relating to the legal propriety of that course of cross-examination the assistant prosecutor urged, inter alia, the following reason for its allowance:
"Just as your Honor admitted a letter written a week before this event ever occurred as circumstantial evidence of Mr. Bartell's state of mind or intent, we say here that Mr. Bartell's motive and purpose was to get votes, no matter how he got them, whether they were legal or not. This was, in effect, an indirect effort to stuff the ballot box, and we respectfully submit that on that ground alone it is proper to show through the defendant himself that he went around to other people who lacked the qualifications to vote, those people that testified that they do not remember what questions he asked them, but they have testified and given facts to show they did not have the right to vote."
We apprehend that the examination had precisely that effect.
*458 Depreciatory innuendoes and insinuations destitute of all probative substance may be very devastating to the protective rights of a defendant. Suppose the charge is that of being a "pickpocket," and the defendant over objection is directed to answer on cross-examination the following question: "Are you generally known in the community in which you live by the nick-name `Fingers?'" See, however, State v. Corrado, 113 N.J.L. 53 (E. & A. 1934). The case of State v. Dietz, supra, is also illustrative.
We may pause to explain that we have liberally excluded from critical consideration all questions which might be said to tend to elicit from the defendant information concerning his possession of official registration certificates such as those submitted by the defendant to Mr. and Mrs. Watson as well as all questions which we deem calculated to establish the criminal motive of the defendant to persuade the Watsons unlawfully to register, and those tending to disclose that the defendant had previously made a statement inconsistent with his direct testimony. Our solicitude concentrates principally upon the propriety of the particular questions hereinbefore set forth.
We shall not undertake an elaborate discussion of the general rule with its recognized exceptions which forbids the State from attempting to prove that the defendant committed other crimes, although of a like nature, for the purpose of showing that he would be likely to commit the crime charged. Informative decisions in our jurisdiction on the subject are Clark v. State, 47 N.J.L. 556 (E. & A. 1885); State v. Raymond, 53 N.J.L. 260 (Sup. Ct. 1891); Meyer v. State, 59 N.J.L. 310 (Sup. Ct. 1896); Leonard v. State, 60 N.J.L. 8 (Sup. Ct. 1897); Ryan v. State, 60 N.J.L. 552 (E. & A. 1897); State v. Sprague, 64 N.J.L. 419 (Sup. Ct. 1900); Bullock v. State, 65 N.J.L. 557, 574 (E. & A. 1900); State v. Newman, 73 N.J.L. 202 (Sup. Ct. 1906); State v. Jankowski, 82 N.J.L. 229 (Sup. Ct. 1912), affirmed 83 N.J.L. 796 (E. & A. 1912); State v. Bloom, 89 N.J.L. 418 (Sup. Ct. 1916); State v. Lanto, 98 N.J.L. 401 (Sup. Ct. 1923), modified 99 N.J.L. 94 (E. & A. 1923); *459 State v. Mussikee, 101 N.J.L. 268 (Sup. Ct. 1925); of more recent date are State v. Donohue, 2 N.J. 381 (1949); State v. De Paola, 5 N.J. 1 (1950); State v. Schmieder, 5 N.J. 40 (1950); State v. Taylor, 5 N.J. 474 (1950).
It seems evident, however, that the trial judge entertained the impression that the aforementioned cross-examination was enveloped by the res inter alios acta rule and that it was permissible under those exceptions which permit proof of collateral offenses to disclose the mental processes, attitude, scienter and intent of the accused or his criminal scheme or plan. Obviously in overruling the objections he relied on the decision in State v. Fay, 127 N.J.L. 77 (Sup. Ct. 1941), and in doing so, we think he misconceived the application of that decision to the dissimilar factual pattern of the case before him.
The mere fact that a candidate for public office in his quest of favorable votes procures the name of an unqualified voter to be registered is not an offense of any kind, collateral or relative. It must appear that he knew when he caused such registration to be made that the person was not entitled to vote at the ensuing election. The proof of that knowledge must be clear, consisting of more than a mere inference that he could have ascertained the truth by further inquiry. Culpable intent must be shown, not mere ignorance of the person's qualifications. State v. McBarron, 66 N.J.L. 680 (E. & A. 1901).
In the Fay case, Haussling "had explained to defendant that he (Haussling) was not entitled to vote because he `had not been there long enough, and had not established a residence,' defendant nevertheless `still urged (him) to vote.'" That testimony constituted evidence of the commission by the defendant of an extraneous crime of the same nature as that for the perpetration of which the defendant was being tried.
Here there was no proof that the defendant had committed an extraneous crime. In fact this defendant had been acquitted of evil and unlawful intentions in the very events concerning which he was cross-examined. Furthermore the *460 State could not hope by means of the cross-examination on collateral subjects to construct a foundation legally to contradict the defendant's answers. State v. Mor, 85 N.J.L. 558 (Sup. Ct. 1914); State v. Newman, 128 N.J.L. 82 (Sup. Ct. 1942).
Where the proof can at best go no further than generate a speculative inference that the defendant had a propensity to commit the offense charged, it is not relevant. The presumption of innocence cannot be demolished by thus attempting to show the likelihood of the defendant's guilt of the particular offense. Meyer v. State, supra; State v. Raymond, supra.
The cross-examination in the particulars herein exhibited conceivably may have tended to arouse in the minds of the jury the surmise that the interviews of the defendant with Mr. and Mrs. Paskowitz, Mrs. Cook, and with Mr. and Mrs. Watson had some common features which collectively constituted manifestations of one systematic and illicit scheme. Innocent acts thus contorted were thereby utilized to augment the weight of the competent evidence of guilt on the remaining counts of the indictment. The probability of that consequential effect is strengthened by the realization that in the present case the inadequate evidence relating to the Paskowitz and Cook counts had been heard by the jury.
And so the cross-examination here impugned did not concern the issues nor was it relevant to the issues, and thus it could not be pursued as a matter of right. If its object was to test the credibility of the witness on collateral subjects, its indulgence in the present case was a mistaken exercise of judicial discretion.
While the public welfare through the instrumentality of the law should facilitate rather than encumber the prosecution of offenders, it must be no less sedulous to assure the accused of a proper trial.
By reason of the mistaken application of the rule of evidence from which we believe the defendant suffered manifest wrong or injury, we conclude that the judgment of conviction must be reversed.