30 N.J. Super. 534 (1954)
105 A.2d 440
IN THE MATTER OF THE APPLICATION OF THE PARKING AUTHORITY OF THE CITY OF HACKENSACK TO ACQUIRE CERTAIN LAND OF JOSEPH DELLA SALA, ET AL., IN THE CITY OF HACKENSACK, BERGEN COUNTY, NEW JERSEY, FOR PUBLIC USE FOR OFF-STREET PARKING PURPOSES AND TO FIX THE COMPENSATION TO BE PAID THEREFOR.
JOSEPH DELLA SALA AND FELICIA DELLA SALA, PLAINTIFFS-APPELLANTS,
v.
PARKING AUTHORITY OF THE CITY OF HACKENSACK, NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 26, 1954.
Decided May 17, 1954.
*537 Before Judges EASTWOOD, JAYNE and SMALLEY.
Mr. Marvin A. Stern argued the cause for the plaintiffs-appellants (Mr. Nathan Pearlman, attorney).
Mr. Ralph W. Chandless argued the cause for the defendant-respondent (Mr. Dominick Fondo, attorney).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
This is an appeal from the judgment of the Superior Court, Law Division, awarding $8,900 to the appellants as damages to their property, a portion of which was taken by condemnation of the Hackensack Parking Authority.
The plaintiffs owned a parcel of land in the commercial district of Hackensack, being approximately 71 feet in frontage on Warren Street and running to a depth of 205 feet, with a width in the rear of approximately 61 feet. The parcel of land taken by condemnation is the rear 105.75 feet, leaving the Warren Street front parcel to a depth of 100 feet. There was erected on the parcel taken four concrete block *538 garages that were being rented for $6 each per month and two hollow-tile buildings, one designated and rented as a machine shop and the other a feed and fertilizer warehouse, at $75 per month. On the remaining portion, not taken, there is a two-family brick dwelling.
The jury viewed the premises in question and after hearing the proofs proffered by the parties, awarded the plaintiffs the sum of $8,900. From the ensuing judgment the plaintiffs appeal.
The plaintiffs contend that the trial court erred in that it refused to permit them to prove by an expert the reproduction costs of the buildings which were admittedly 50 or 60 years old (one containing an inscription of 1842); in denying their expert to testify both on direct and rebuttal as to reproduction costs, although permitting defendant's expert, over objection, to testify thereto; that the verdict is against the weight of the evidence; that certain remarks and questions by the court were prejudicial to the plaintiffs; that the judgment is erroneous in that it failed to include an allowance of interest on the award from the date of taking and that the trial court erred in refusing to charge the jury as requested by plaintiffs.
In taking the plaintiffs' property, the Parking Authority of the City of Hackensack was acting under the provisions of L. 1948, c. 198 (R.S. 40:11A-1 et seq.), as well as its powers of eminent domain under the provisions of R.S. 20:1 et seq.
The record discloses that plaintiffs' expert testified as to his opinion of the value of the property taken and then plaintiffs attempted to elicit from him testimony as to the cost of reproduction of the old buildings on the land. This the court would not permit, stating:
"It is a total of the land and the buildings. You can't break up and say a building is worth so much, and the land is worth so much, any more than you can evaluate a tree or bush on it. That is what enhances the value of the land."
The court similarly refused to permit a building contractor, proffered by plaintiffs, to testify as to reproduction costs.
*539 The defendant's expert was called and testified that in his opinion the value of the property before taking was $28,500, and after taking was $19,600, and that the $8,900 difference was the damage plaintiffs sustained by the taking. On cross-examination, the plaintiffs posed this question: "Q. Mr. Schwenn, would you mind telling us on what basis you have appraised this property?" When Mr. Schwenn stated one of his bases for his opinion as to value was reproduction cost less depreciation, the court, over plaintiffs' objection, stated: "I will allow it, how he arrived at his value, so the jury can determine whether it is any good or not. I will allow it. It is an entirely different proposition than bringing in somebody and asking him what the replacement cost of a 4-garage is. Go ahead." It was in rebuttal to the answer received to this question that plaintiffs' counsel later sought unsuccessfully to have his expert testify as to the cost of reconstruction of the buildings as of December 12, 1952.
An examination of the authorities respecting the general rule regarding the admissibility of evidence of reproduction costs as an aid to valuation in condemnation proceedings leads us to believe that it is a matter within the discretion of the trial court, and that in those instances where it has been allowed the circumstances warranting its admission were that the improvement was of an unusual kind or description with a value not readily discernible, or that there was an absence of comparable sales to indicate comparable values.
"The general view is that the amount of recovery is to be measured by the value of the land, together with the improvements and fixtures thereon, viewed as a whole and not separately. To determine the market value as vacant property alone, and then to ascertain to what extent, if any, the improvements enhance such value, is not allowable under a statute requiring assessment of the value of property sought to be condemned and of all improvements thereof pertaining to the realty. * * * No damages may be recovered for the cost of erecting new buildings to replace those taken in the eminent domain proceeding." 18 Am. Jur., Eminent Domain, sec. 253, pp. 892, 893.
The measure of damages is not the market value of the land plus reproduction costs of improvements, but the market *540 value of the property as improved in view of all uses to which it is adaptable and available. People v. Ocean Shore Railroad, Inc., 32 Cal.2d 406, 196 P.2d 570, 6 A.L.R.2d 1179 (Sup. Ct. 1948). Evidence of the structural value on the land is held to be inadmissible; that evidence of the cost of a new building erected for business purposes is no proof of the value of an old building condemned for a public use.
"* * * evidence of the structural value of the buildings is admissible for the purpose of showing the total value, where they are well adapted to the kind of land on which they are erected, and enhance its value. Where the property has no established market value, the cost of construction may furnish some evidence as to the value of the improvement." 18 Am. Jur., supra, sec. 346, p. 990; City of Los Angeles v. Klinker, 219 Cal. 198; 25 P.2d 826, 90 A.L.R. 148.
Vide Banner Milling Co. v. State, 240 N.Y. 533, 148 N.E. 668, 41 A.L.R. 1019 (Ct. App. 1925), writ of certiorari denied, 269 U.S. 582, 46 S.Ct. 107, 70 L.Ed. 423 (1925) (flour mill); Lebanon & Nashville Turnpike Co. v. Creveling, 159 Tenn. 147, 17 S.W.2d 22, 65 A.L.R. 440 (Sup. Ct. 1929) (turnpike).
Testimony as to the original cost of a building designed for business construction is admissible unless the trial judge, in the exercise of his discretion, shall find that the time or circumstances of the original construction are so remote from those existing at the time of the taking that the original cost can have no reasonable bearing on the market value in issue, or shall find that such market value can be adequately shown by evidence of sales of comparable property. 172 A.L.R., pp. 238, 244. In those jurisdictions allowing such evidence it depends upon the trial court's finding that it will be an aid to the jury in assessing damages. Patch v. City of Boston, 146 Mass. 55, 14 N.E. 772 (Sup. Jud. Ct. 1888); Stone v. Commonwealth, 181 Mass. 438, 63 N.E. 1074 (Sup. Jud. Ct. 1902).
The New Jersey rule for establishing what is the measure of just compensation when the whole property is taken, is aptly stated in the case of Butler Hard-Rubber Co. *541 v. Mayor, etc., of City of Newark, 61 N.J.L. 32, 52 (Sup. Ct. 1897), to be: "* * * the market value of the property, as between an owner willing to sell and a purchaser desiring to buy * * *" and "`If part only be taken, or, in the language of the act, the property be "affected" by the operation of the works for which property is taken, then the problem is this: The difference between the value of the property before it was taken or interfered with, and the value that remains in the property after the injury is done; market values in both instances being determined on the basis of what, in the judgment of the jury, the property, under either circumstances, would bring in the market, as between a purchaser desiring to buy and an owner willing to sell. * * *'" Cf. State Highway Comm. v. Mayor and Board of Aldermen of Town of Dover, 109 N.J.L. 303 (E. & A. 1932); State Highway Commission v. Dey, 110 N.J.L. 197 (E. & A. 1933); Newark & Essex Bldg. Corp. v. City of Newark, 132 N.J.L. 574 (Sup. Ct. 1945) (a tax assessment case), wherein Mr. Justice Bodine intimated that consideration of replacement costs was proper when taken with other matter of valuation, and stated: "In determining true value between a willing seller and a willing buyer, replacement cost and income return are not the sole criterion."
More recently Judge Brennan, in the case of In re Housing Authority of City of Bayonne, 21 N.J. Super. 254 (App. Div. 1952), denied the separation of values for the lands and improvements and stated, at page 257:
"* * * In W.A. Manda, Inc., v. Delaware, L. & W.R. Co., 89 N.J.L. 327 (E. & A. 1916), it was held that when land is taken by condemnation, trees and topsoil thereon are a part of the land. They should not be valued separately and apart from the land by the jury, but may be taken into consideration in determining to what extent, if any, the value of the land is thereby enhanced. Vide, by analogy, Ross v. Commissioners of Palisades Interstate Park, 90 N.J.L. 461 (Sup. Ct. 1917), in which the court said: `Valuing land taken under condemnation, underlaid with stone, the stone should not be valued separately and apart from the land, but it may be shown to what extent the land is enhanced in value by the stone. The stone is a component part of the land.'"
*542 In the matter sub judice, the improvements upon the lands in question consisted of four concrete block garages, two hollow-tile buildings, one rented as a machine shop and the other a feed and fertilizer warehouse. Valuation by comparability or similar sale values or other such appropriate method has not been shown to be impractical or impossible. On the other hand, it was established that the buildings were at least 50 or 60 years old and one bore the inscription 1842. It is conceivable that reproduction costs would be inappropriate as a measure of value or would furnish no real aid to assessment of damages for one or more of the reasons above-stated, in the discretion of the trial court. We conclude that there was no mistaken exercise of discretion in excluding evidence of reproduction costs nor was such exclusion manifestly harmful or prejudicial to the plaintiffs.
Nor do we find that there was any error in permitting the defendant's expert to testify as to reproduction costs. It was clearly responsive to plaintiffs' query: "Q. Mr. Schwenn, would you mind telling us on what basis you appraised this property?"
At the conclusion of the defendant's case, in rebuttal, the plaintiffs attempted to introduce evidence of reconstruction costs by propounding to their expert the question: "Could you tell us what rule of thumb would apply as a per cubic foot approximate cost of reconstruction of that building as of December 12, 1952?" The court refused to admit this testimony, holding that: "I will not permit you to do by indirection what I told you you couldn't do direct." We think that the court acted within its discretion. And, if plaintiffs sought to impeach the defendant's expert's basis of valuation, there were methods of introducing evidence of the proper basis of valuation. Inquiry into reconstruction costs were matters collateral to the issue of valuation for condemnation purposes and the defendant's expert's response to plaintiffs' cross-examination containing matters collateral to the issue furnishes no license to controvert them. State v. Mor, 85 N.J.L. 558 (Sup. Ct. 1914). Cf. Kiernan v. *543 Mauer, 13 N.J. Super. 18, 22 (App. Div. 1951); State v. Bartell, 15 N.J. Super. 450, 460 (App. Div. 1951).
We find no merit in appellants' contention that the verdict is against the weight of the evidence and that the jury failed to include severance damages or, in other words, damage to the portion retained by the owners. The testimony of the experts was in sharp contrast and thus it became the sole province of the jury to determine the question of damages. It may well be that they found that there was no damage to the residue of the property. Certainly, it does not appear from the record that the verdict was the result of mistake, partiality, prejudice or passion. R.R. 1:5-3(a); 2:5.
Appellants complain that they suffered manifest harm or prejudice by the attitude of the trial judge as well as by certain remarks and comments made by him. We disagree. Additionally, no timely objection or motion was addressed to the trial judge with respect thereto. A trial court always has the right to comment within proper bounds and in his discretion to interrogate the witnesses. In the absence of such a timely objection or motion, or a request for instructions, there is no legal error on which to ground an appeal. Roberts Electric, Inc., v. Foundations & Excavations, Inc., 5 N.J. 426, 431 (1950).
No exception was taken to the court's failure to charge certain requests submitted by appellants nor to the court's charge. Accordingly, the appellants may not assert such grounds of error on appeal. R.R. 4:52-1.
The fact that the judgment does not include interest on the amount of the award would not justify setting aside the verdict. Interest may be determined by the court and added to the verdict. While the record is not too clear as to whether the parking authority has entered into possession of the property, we get the impression that such is not the fact, but on the contrary, the owner is still in possession and collecting rents from the tenants. Significantly, the appellants were unsuccessful in their efforts to persuade the jury to increase the award made by the commissioners. Under *544 these circumstances, we are of the opinion that the owner is not entitled to any interest on the amount of the award. Bergen County Sewer Authority v. Little Ferry Borough, 15 N.J. Super. 43, 52 (App. Div. 1951).
Our review of the other grounds of appeal convinces us that they are unmeritorious.
Judgment affirmed.